## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

IN RE: MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
DIRECTED TO DEPARTMENT OF                    Case No._____
VETERANS AFFAIRS

Underlying case pending in Middle District of
Tennessee:

STANDEX INTERNATIONAL CORP.
 6 Manor Parkway
 Salem, NH 03079

         Plaintiff/Counter-Defendant,

v.

BURLODGE LIMITED
 Unit 5, Hook Rise Business Center
 225 Hook Rise South
 Surbiton
 Surrey KT6 7ld
 England

         Defendant/Counter-Plaintiff.

## MOTION OF BURLODGE LIMITED FOR AN ORDER COMPELLING THE
## DEPARMENT OF VETERANS AFFAIRS TO COMPLY WITH SUBPOENA

Burlodge Limited, respectfully moves the Court, in accordance with Fed. Rule Civ. P. 37

(a) and 45 (c)(2)(B)(i), for an order compelling the Department of Veterans Affairs (DVA) to

comply with a lawfully issued non-party subpoena.  A copy of the subpoena is submitted

herewith.  (Exhibit 1)  To date DVA has not provided a single document – nor has DVA

attempted to complete the *Narrowing Table* prepared by Burlodge and presented to DVA in an

attempt to streamline compliance with the subpoena.  Instead of attempting to cooperate, DVA

"declines to participate in this matter. . . ." (Exhibit 2)

**<u>Summary</u>**

This case concerns a patent for a method of preparing and dispensing food in places like hospitals and prisons where a central kitchen produces food that is later dispensed to individuals located in their rooms or cells. (<u>See</u> Exhibit 6) In order to practice the patented method, special equipment is required. <u>Id.</u> One such piece of equipment needed to practice the method is called a "retherm cart". <u>Id.</u> Generally, a retherm cart is a cart that can contain multiple trays (of food), and can both heat and cool the food on the trays. <u>Id.</u> The patented method that uses the retherm carts increases the efficiency of feeding patients because the food can be centrally produced, kept cold to maintain sanitation, and later reheated just prior to serving using the retherm carts.

Both parties in the underlying case, Burlodge (the movant) and Standex, manufactured and sold these retherm carts. However, only Burlodge has the ability to grant its customers the right to use the retherm carts to practice the patented method. Accordingly, the central inquiry here involves knowing (1) who purchased the retherm carts from Standex, and (2) whether the retherm carts were used to practice Burlodge's patented method of dispensing food.

Burlodge knows, from a Rule 30(b)(6) deposition of Standex, that the DVA purchased these retherm carts from Standex for use at a number of facilities. (Exhibit 7) Unfortunately, Standex would not provide details as to how the DVA facilities use / used these Standex manufactured retherm carts. <u>Id.</u> This is what brought about the present non-party subpoena at issue.

The information sought by the subpoena concerns the purchase and use of Standex's UNITRON 7 brand retherm carts by approximately forty (40) DVA facilities. This is not a "fishing expedition" - nor is the subpoena overbroad - because the subpoena seeks information

relating only to those DVM facilities that were uncovered in discovery conducted in the underlying patent infringement case.

Understanding and appreciating the burden and expense (by all involved) in undertaking an inquiry into the 40 DVA facilities, counsel for Burlodge attempted to be precise as possible and narrow the inquiry of the subpoena by providing the *Narrowing Table* (Exhibit 3).[1]  This *Narrowing Table*, if completed by a DVA official, will greatly streamline the inquiry at hand by either ruling-in or ruling-out each of the particular 40 facilities at issue.  An examination of the *Narrowing Table* makes it clear that if the facility at issue distributes food to other buildings remote from the central kitchen using a refrigerated vehicle, then further more formal inquiry is necessary.  (Exhibit 3)  Burlodge made two attempts to have DVA participate in narrowing the inquiry, but the DVA declined.  (Exhibits 1 & 8)

## Background: The Underlying Patent Case and How it Relates to DVA

Burlodge Limited is the defendant/counterclaim-plaintiff in a patent infringement suit initiated by Standex International Corporation and currently pending in the Middle District of Tennessee.  (Exhibit 4)  Standex initiated the suit by filing a complaint for declaratory relief, seeking a declaration that Standex does not infringe the patent owned by Burlodge Limited.  Id. Burlodge thereafter counterclaimed for infringement.  (Exhibit 5)  The patent covers a method of dispensing food in a working cycle.  (Exhibit 6)  It is Burlodge's contention that Standex contributed to the infringement, or induced the infringement of Burlodge's reissue patent by selling food service equipment and providing the know-how to use this equipment to infringe the Burlodge reissue patent.  (Exhibit 5)

In order for Burlodge to meet its burden of proof in the infringement case, Burlodge must

---

[1] It should also be noted that the *Narrowing Table* should be directed to past acts as well.  If relief from the Court involves directing the DVA to populate the *Narrowing Table* as a first step, the inquiry should appropriately include past acts limited to the time the UNITRON 7 retherm carts were purchased.

prove that the method of the reissued patent is being practiced by another, and that Standex had

knowledge that its conduct would lead a third party to practice, or assist the third party to

practice the patented method. <u>RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.</u>, 326

F.3d 1255, 1268, 66 USPQ2d 1593 (Fed. Cir. 2003) ("liability for either active inducement of

infringement or for contributory infringement is dependent upon the existence of direct

infringement. . . ."). During discovery, it was disclosed that DVA purchased this equipment

from Standex, and the equipment is likely being used to practice the method of Burlodge's

reissue patent. (Exhibit 7)  If this is true, this evidence is the "direct infringement" necessary to

meet the burden of proof that Burlodge has in the underlying case.  Accordingly, Burlodge, in

accordance with the Federal Rules, prepared and served a subpoena on DVA.  (Exhibit 1)

Using the *Narrowing Table* (Exhibit 3) is designed to minimize costs to the subpoenaed

non-party (and to Burlodge) in having to proceed with a costly deposition and inspection of each

of the 40 facilities, when it may not be necessary.  It is impossible that the *Narrowing Table*

(Exhibit 3) will rule a particular facility out as having information useful to the underlying

action. In other instances, the appropriate response may necessitate a more formal inquiry with a

deposition and formal record for use in the Tennessee proceeding.

**The Court Should Compel Cooperation as the Information Sought Is Relevant, Not**
**Protected, Narrowly Tailored, and Is Available by Other Means**

Analysis of this dispute begins with the recognition that the "scope of discovery

permitted under the Federal Rules . . . is broad, and 'parties may obtain discovery regarding any

matter, not privileged, that is relevant to the claim or defense of any party.'" <u>In Re Apollo</u>

<u>Group, Inc. Securities Litigation</u>, No. Misc. 06-558 (CKK), 2007 U.S. Dist LEXIS 22045,

(D.D.C. March 12, 2007) (quoting Fed. R. Civ. P. 26(b)(1)).  Although DVA may argue the

standard for granting or denying a motion to compel is set forth in the Department's *Touhy*

Regulations, found at 38 C.F.R. sec. 14.800 -14,810, this is not the case. The *Touhy* Regulations do not displace the Federal Rules of Civil Procedure. Rather, it is Fed. R. Civ. P. 45 that provides the standard for determining whether the DVA should comply with the subpoena. C & E Services, Inc. v. Ashland Inc., Civ. No. 03-1857 (JMF), 2008 WL 1744618 at *3 (D.D.C. Apr. 14, 2008); Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007).

The Federal Rules expressly permit non-party subpoena practice. Fed R. Civ. P. 45. This includes attending a deposition and inspection of premises. Fed R. Civ. P. 45 (A)(iii), (B). Generally speaking, "'relevance' for discovery purposes is broadly construed. Under Rule 26(b), "information sought need not be to be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Food Lion v. United Food & Commer. Workers Int'l Union,. 103 F.3d 1007, 1012 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 26(b)(1)).

DVA's claim that the subpoena is overbroad is without merit because DVA never attempted to participate in filling out the *Narrowing Table* (Exhibit 3) to even make a first step in determining the scope of the subpoena. A second reason why the scope of the subpoena cannot be overbroad is that the subpoena relates only to those DVA facilities that were listed in testimony and documents by Standex. Burlodge attempted to streamline compliance by providing the *Narrowing Table* (Exhibit 3), which seeks information, which may narrow the scope of inquiry even further, as this would lead to a reduction in cost to DVM and Burlodge as well, who is forced to endure the costs.

The topics discussed in Exhibit A to the subpoena (a copy of which is included herein as Exhibit 1 for reference) are highly relevant as they concern DVA's interaction with Standex or their agents and relate to the food dispensation cycle and methods which are at the center of the

patent infringement action. Similarly, the requests for production contained in Exhibit B to the subpoena are all narrowly tailored and relate to the purchase of Unitron systems sold by Standex to DVA as well as the methods employed by DVA in producing and dispensing food. (Exhibit 1) Exhibit C to the subpoena is a request to inspect pursuant to Rule 45, which directly relates to inspection of the Unitron equipment at issue in the patent infringement action and how the Unitron equipment is used in the entire dispensation cycle. Tantamount to the relevance analysis is the fact that during discovery of the patent case, it was disclosed that DVA purchased this equipment from Standex, and the equipment may be used to practice the method of Burlodge's reissued patent. (Exhibit 7)

**WHEREFORE**, in view of this Motion, Burlodge Limited respectfully requests that the Court issue an appropriate order compelling compliance with the subpoena.

Dated: August 15, 2008                    Respectfully submitted,


Jonathan K. Tycko
D.C. Bar No. 445851
Tycko & Zavareei LLP
2000 L Street, N.W. Suite 808
Washington, D.C. 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
jtycko@tzlegal.com


-and-

/Charles L. Riddle/
John F. A. Earley III
Frank J. Bonini, Jr.
Charles L. Riddle
Harding, Earley, Follmer & Frailey
86 The Commons at Valley Forge
1288 Valley Forge Road
P.O. Box 750
Valley Forge, PA 19482-0750
Telephone: 610-935-2300

*Attorneys for Movant, Burlodge Limited*

### CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7(m)

I hereby certify that, before the filing of this motion, counsel for Burlodge Limited and counsel for the Department of Veterans Affairs conducted a telephone conference in a good faith effort to resolve or narrow the issues presented by this motion, and that despite these good faith efforts, the Department of Veterans Affairs opposes the relief sought by way of this motion.



Jonathan K. Tycko

### CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of August, 2008, the foregoing was served by hand-delivery upon:

Deborah K. McCallum, Esq.
Assistant General Counsel
Department of Veterans Affairs
Office of General Counsel
810 Vermont Ave. N.W.
Washington, D.C. 20420

and by overnight delivery upon:

Geoffrey Kressin, Esq.
Luedeka, Neely & Graham
P.O. Box 1871
Suite 1871 Riverview Tower
900 South Gay Street
Knoxville, TN 37902

Paul W. Ambrosius, Esq.
Trauger & Tuke
The Southern Turf building
222 Fourth Avenue, N
Nashville, TN 37219

Jonathan K. Tycko

LAW OFFICES

# HARDING, EARLEY, FOLLMER & FRAILEY, P.C.

JOHN F.A. EARLEY III
FRANK J. BONINI, JR.
CHARLES L. RIDDLE

**86 THE COMMONS AT VALLEY FORGE EAST**
**1288 VALLEY FORGE ROAD**
**POST OFFICE BOX 750**
**VALLEY FORGE, PENNSYLVANIA 19482-0750**

U.S. AND
INTERNATIONAL
INTELLECTUAL
PROPERTY

TELEPHONE          E-MAIL          FAX
(610) 935-2300   heff@hardingearley.com   (610) 935-0600

June 30, 2008

*Via Hand Delivery*
Office of General Counsel
Department of Veterans Affairs
810 Vermont Ave N.W.
Washington D.C. 20420

Re:    Standex v. Burlodge Limited

Dear Sir/Madam:

We are attorneys for Burlodge Limited in a patent infringement case pending the Middle District of Tennessee.   It has come to our attention in discovery that you may possess information that may have a bearing on the pending case.   The subject matter of such is contained in the attached subpoena.

We have also had correspondence with Ellen M. Hastings, Esquire regarding a prior subpoena which was issued on VAMC Atlanta.  I enclose the correspondence relating to the same.  I also enclose a document entitled Inquiry Table, which will greatly streamline the inquiry and make clear the breath of the subpoena.  If the VA is willing to participate in good faith, we would appreciate filling in the information of the inquiry table and returning it to us so you may minimize the information sought by the subpoena.  Completing the inquiry table would be a first step in determining whether the VA does in fact have information relevant to the pending case.

Please contact me upon receipt so we may facilitate the fulfillment of the subpoena.

Respectfully yours,

Charles L. Riddle

CLR/acc
Enclosures

PATENT • TRADEMARK • COPYRIGHT • UNFAIR COMPETITION • INTERNET • E-COMMERCE • COMPUTER •
LICENSING

AO88 (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF     Columbia

| | |
|---|---|
| Standex International Corporation | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| Burlodge Limited | Case Number:[1]  01-cv-201 |
| | Middle District of Tennessee Nashville Division |

TO:  Department of Veterans Affairs
Office of General Counsel
810 Vermont Ave N.W.
Washington D.C. 20420

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   See attached Exhibit A | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Exhibit B

| PLACE | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES    See attached Exhibit C | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *(signature)* | 6/30/8 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles L. Riddle
Harding, Earley, Follmer & Frailey ; 86 The Commons at Valley Forge East, 1288 Valley
Forge Road, P.O. Box 750, Valley Forge, PA 19482-0750, 610-935-2300

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                                      SIGNATURE OF SERVER

                                              _____
                                                       ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

<u>Exhibit A</u>

<u>Place of Deposition:</u>

Moore & Jackson, LLC.
305 Washington Ave.
Suite 401
Towson, MD 21204
(*or a location to be agreed upon*)

<u>Date and Time of Deposition:</u>

July 14, 2008
(*or a date or dates to be agreed upon*)

<u>Topics of Deposition:</u>

1.    The meal preparation, delivery and dispensation methods employed by any VAMC facility using Unitron 7 equipment.

2.    The purchase of each Unitron 7 product.

3.    Communications or correspondence between USECO (and/or Standex Corporation) and the VA.

4.    The cost to prepare, deliver and dispense a meal.

5.    Costs billed or recovered in connection with meal preparation, delivery, and dispensation services to patients or other companies or organizations (such as a sister company, for example).

## Exhibit B

Request for Production

1.    All documents relating to the purchase of Unitron 7 equipment.

2.    All requests for proposal that let to the purchase of Unitron 7 equipment.

3.    All proposals for rethermalization systems.

4.    The file relating to the Unitron 7 system.

5.    Documents relative to systems considered in addition to the Unitron 7.

6.    Documents sufficient to show what costs are involved in preparing and dispensing a meal.

7.    Documents sufficient to establish what amounts are billed and/or recovered for meals prepared and/or dispensed with Unitron 7 equipment (or what amounts are recovered for receiving a meal prepared and dispensed by any VAMC facility utilizing USECO/UNITRON brand equipment.

8.    Documents which evidence (or are sufficient to establish) any profit made in providing meals to customers or consumers (or other recipient of the meals (e.g., one entity to another entity)).

9.    All videos showing the Unitron 7 equipment.

<u>Exhibit C</u>

<u>Inspection of Premises:</u>

1.      All locations relating to meal preparation, delivery, and consumption.

2.      All locations where Unitron 7 equipment is used.

3.      All locations involved in meal preparation, dispensation, and the return of meal delivery equipment from the consumers to the preparation area.

4.      All locations that involve the meal delivery cycle or cycles employed by any VAMC using UNITRON brand equipment manufactured by USECO.

<u>Time for Inspection</u>

Inspection shall take place upon agreeing on a mutual time whereby the use of the Unitron 7 equipment may be viewed how the equipment is used in a complete cycle.

## Inquiry Table

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Mont/Tuskg | | | |
| VAMC Tuscaloosa | | | |
| VAMC Bay Pines | | | |
| VAMC Miami | | | |
| VAMC Tampa | | | |
| VAMC Palm Beach | | | |
| VAMC Augusta | | | |
| VAMC Dublin | | | |
| VAMC Atlanta | | | |
| VAMC Balt-Downtown | | | |
| VAMC Brecc | | | |
| VAMC Perry Point | | | |
| VAMC Asheville | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Durham | | | |
| VAMC Fayetteville | | | |
| VAMC Salisbury | | | |
| VAMC Lyons | | | |
| VAMC E Orange | | | |
| VAMC Castle Point | | | |
| VAMC Manhattan | | | |
| VAMC Montrose | | | |
| VAMC Northport | | | |
| VAMC St Albans | | | |
| VAMC Bronx | | | |
| VAMC Chillicothe | | | |
| VAMC Dayton | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Altoona | | | |
| VAMC Butler | | | |
| VAMC Pittsburgh UN | | | |
| VAMC Pittsburgh ASP | | | |
| VAMC Pittsburgh HIG | | | |
| VAMC Pitts-Delafield | | | |
| VAMC Charleston | | | |
| VAMC Hot SPGS | | | |
| VAMC MTN HOME | | | |
| VAMC Houston | | | |
| VAMC Hampton | | | |
| VAMC Richmond | | | |
| VAMC Salem | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
| --- | --- | --- | --- |
| VAMC Beckley | | | |
| VAMC Milwaukee | | | |

# Correspondence Re:

# VAMC Atlanta

# Subpoena

VAMC-Atlanta
Subpoena
Correspondence



**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

April 15, 2008

<u>BY FACSIMILE ONLY</u>
(610) 935-0600

Charles L. Riddle, Esq.
Harding, Earley, Follmer & Frailey, P.C.
86 The Commons At Valley Forge East
1288 Valley Forge Road
Post Office Box 750
Valley Forge, Pennsylvania 19482-0750

Re: <u>Standex Int'l Corp. v. Burlodge Ltd.</u>, USDC M.D. Tenn.
Case No. 3:01-00201 Subpoena to United States Department of
Veterans Affairs

Dear Mr. Riddle:

I am writing in response to your April 4, 2008, letter to
Ellen Hastings of this office relating to the subpoena
*duces tecum* that you had served on the VA Medical Center in
Atlanta, Georgia (VAMC-Atlanta). The Department of Veterans
Affairs (VA) declines to participate in this matter as
fully set out below.

This is a patent infringement action between private
parties in which your client alleges that Standex
International Corporation has "contributed to the
infringement, or induced the infringement of Burlodge's
reissue patent by selling equipment and providing the know-
how to use this equipment" to the VA (quoting your March
13, 2008, letter to me). In essence, therefore, your
client alleges infringement of the reissue patent by the
VA, a third party to the lawsuit at this time. Your
subpoena to the VA seeks testimony in the manner of a Rule
30(b)(6) deposition on five topics going back eight years,
as well as seeking production of nine broad categories of
documents and an inspection of premises. By your April 4,
2008, letter to Ms. Hastings, you have supplemented the
requested discovery to require information relating to any
alleged infringement of the reissue patent at forty-one
(41) additional VA Medical Centers around the country.

After reviewing the subpoena, the above referenced correspondence, I consulted with VA counsel in Veterans Affairs Central Office (VACO), in Washington, D.C., and reviewed the Department's *Touhy* Regulations, found at 38 C.F.R. 14.800 to 14.810, and consulted with the Department of Justice, before reaching my conclusion. Based upon my review and consultations, I have concluded not to authorize the disclosure of VA records or the testimony of VA personnel in response to your demand.

In making this decision, I have considered the factors delineated in 38 C.F.R. § 14.804, as I am required to do. Subsections 14.804(a), (b), (d), (h), (l) and (o) each militate against disclosure. Permitting this discovery would be detrimental to the VA in that the VA would be required to "spend[] the time and money of the United States for private purposes," which would reduce "the time of VA personnel [needed] for conducting their official duties concerning servicing the Nation's veteran population." Id. § 14.804(a). The "testimony or production of records" also would not "assist VA in performing its statutory duties." Id. § 14.804(b). Further, the demand is unduly burdensome in its scope, seeking documents over an eight year period, Rule 30(b)(6) type deposition testimony, a physical inspection of VAMC-Atlanta, and an analysis of the methodology utilized at more than forty VA Medical Centers to prepare and deliver food to patients. Id. § 14.804(d). For the reasons outlined above, the testimony also would be inappropriate under the circumstances in light of your reference to alleged patent infringement by the VA, Id. §§ 14.804(h), (o), under which it reasonably could be considered simply a fishing expedition for pre-filing discovery against the VA in a contemplated infringement action. Finally, the requested discovery is not related to furthering the VA's mission of servicing the Nation's veterans. Id. § 14.804(l).

Sincerely,

W.M. Thigpen
Regional Counsel

cc: Paula Marti, FOIA Officer
    Helen Brown, RD




## Department of Veterans Affairs
### Office of Regional Counsel
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

# FaxCoverSheet

| | | | |
|---|---|---|---|
| **To:** | Charles Riddle | **From:** | Ellen M. Hastings |
| **Fax:** | ·610-935-0600 | **Pages:** | ~~4~~ 3 |
| **Phone:** | | **Date:** | 4-15-08 |
| | | **Time:** | |
| **Re:** | Standex v. Burlodge Limited | | |

☐ Urgent   ☐ For Review   ☐ Please Comment   x Please Reply   ☐ Please Recycle

● **Comments:** Mr. Riddle: We have attached the Regional Counsel's response. Thank you for your cooperation. Ellen

This message is intended only for the use of the person or office to who is addressed and may contain information that is privileged, confidential or protected by law. All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone at the above telephone number, and return the original message to us at the above address via the United States Postal Service. Thank you.

LAW OFFICES

# HARDING, EARLEY, FOLLMER & FRAILEY, P.C.

JOHN F.A. EARLEY III
FRANK J. BONINI, JR.
CHARLES L. RIDDLE

86 THE COMMONS AT VALLEY FORGE EAST
1288 VALLEY FORGE ROAD
POST OFFICE BOX 750
VALLEY FORGE, PENNSYLVANIA 19482-0750

U.S. AND
INTERNATIONAL
INTELLECTUAL
PROPERTY

TELEPHONE        E-MAIL        FAX
(610) 935-2300  heff@hardingearley.com  (610) 935-0600

April 4, 2008

*Via Fax 404-929-5870*
Ellen M. Hastings, Esquire
Department of Veterans Affairs
Office of Regional Counsel
1700 Clairmont Rd.
Decatur, GA 30033

RE:    Standex , Int'l v. Burlodge Ltd.
       <u>Civil Action No. 01-CV-201 (Subpoena Department of Veteran Affairs).</u>

Dear Ms. Hastings:

Further to our telephone conversation of 3/28/08 I would like to thank you for getting back to me on these issues.

As we had discussed, based on information we have received in the Standex v. Burlodge litigation it appears that a large number of VA facilities have purchased the Unitron 7 system and may be practicing the method of the reissue patent that was discussed in my letter of March 13, 2008. However, before we undertake to depose individuals with knowledge concerning the use of the specific system at a specific site, and/or undertake an inspection in accordance with the subpoena, we suggested that the VA provide us with some basic information regarding the methodology used by each particular facility. This may help determine whether we need to proceed with any further discovery in accordance with the subpoena.

Particularly, with respect to the facilities on the attached table, we would like to know whether meals are consumed by patients at a building that is separate from the building where the meals are prepared and assembled. If meals are delivered to locations that are remote from the building where the meals are prepared and assembled, we would like to know whether a refrigerated vehicle is used. Additionally it would be helpful to know the identity of the individual with knowledge concerning this methodology. For your convenience, the table provided can be filled out and returned to my attention. This would be a first step towards fulfilling the demands of the subpoena. If necessary, we will work with you to seek the

PATENT • TRADEMARK • COPYRIGHT • UNFAIR COMPETITION • INTERNET • E-COMMERCE • COMPUTER •
LICENSING

HARDING, EARLEY, FOLLMER & FRAILEY

Ellen M. Hastings
April 4, 2008
Page 2

documents from particular facilities at a later time if they are needed. The same applies to depositions/inspections, which can be held in advance until the information in the enclosed table is provided.

Thank you again for your time. Please contact me with questions or comments.

Thank you,

Charles L. Riddle

CLR/acc

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Mont/Tuskg | | | |
| VAMC Tuscaloosa | | | |
| VAMC Bay Pines | | | |
| VAMC Miami | | | |
| VAMC Tampa | | | |
| West Palm Beach | | | |
| VAMC Augusta | | | |
| VAMC Dublin | | | |
| VAMC Atlanta | | | |
| VAMC Balt-Downtown | | | |
| VAMC Brecc | | | |
| VAMC Perry Point | | | |
| VAMC Asheville | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Durham | | | |
| VAMC Fayetteville | | | |
| VAMC Salisbury | | | |
| VAMC Lyons | | | |
| VAMC E Orange | | | |
| VAMC Castle Point | | | |
| VAMC Manhattan | | | |
| VAMC Montrose | | | |
| VAMC Northport | | | |
| VAMC St Albans | | | |
| VAMC Bronx | | | |
| VAMC Chillicothe | | | |
| VAMC Dayton | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Altoona | | | |
| VAMC Butler | | | |
| VAMC Pittsburgh UN | | | |
| VAMC Pittsburgh ASP | | | |
| VAMC Pittsburgh HIG | | | |
| VAMC Pittsburgh HIG | | | |
| VAMC Pitts-Delafield | | | |
| VAMC Charleston | | | |
| VAMC Hot SPGS | | | |
| VAMC MTN HOME | | | |
| VAMC Houston | | | |
| VAMC Hampton | | | |
| VAMC Richmond | | | |
| VAMC Salem | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible Individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Beckley | | | |
| VAMC Milwaukee | | | |

LAW OFFICES

# HARDING, EARLEY, FOLLMER & FRAILEY, P.C.

JOHN F.A. EARLEY III
FRANK J. BONINI, JR.
CHARLES L. RIDDLE

86 THE COMMONS AT VALLEY FORGE EAST
1288 VALLEY FORGE ROAD
POST OFFICE BOX 750
VALLEY FORGE, PENNSYLVANIA 19482-0750

U.S. AND
INTERNATIONAL
INTELLECTUAL
PROPERTY

TELEPHONE          E-MAIL          FAX
(610) 935-2300  heff@hardingearley.com  (610) 935-0600

March 13, 2008

*Via Fax 404-929-5870*
W.M. Thigpen
Regional Counsel
Department of Veterans Affairs
Office of Regional Counsel
1700 Clairmont Road
Decatur, GA 30033-4032

Re: Subpoena of VMAC- Atlanta
    Standex v. Burlodge Limited

Dear Mr. Thigpen:

    This relates to the subpoena served on your client (Exhibit 1) and your letter of February 28, 2008 (Exhibit 2), which outlined the regulations which control the production of documents and things. Below is a synopsis of the litigation to which your client may have information that may be probative of one or more issues relating to the case.

Background:

    Our client Burlodge Limited is the defendant/counterclaim-plaintiff in a patent infringement suit initiated by Standex International Corporation. Standex initiated the suit by filing a complaint for declaratory relief, seeking a declaration that Standex does not infringe the patent owned by Burlodge Limited. (Exhibit 3) Burlodge thereafter counterclaimed for infringement. (Exhibit 4) The case was suspended for a number of years while the original patent was reexamined by the United States Patent and Trademark Office. Reexamination was successful and Burlodge's invention reissued under patent number RE39,551. (Exhibit 5) Shortly thereafter, the case resumed. The patent covers a method of dispensing food in a working cycle. Id. It is Burlodge's contention that Standex contributed to the infringement, or induced the infringement of Burlodge's reissue patent by selling equipment and providing the know-how to use this equipment to infringe the Burlodge reissue patent. During discovery, it was disclosed

W.M. Thigpen
March 13, 2008
Page 2

that a number of VA facilities purchased this equipment from Standex, and the equipment is likely being used to practice the method of Burlodge's reissued patent. (Exhibit 6)

In order for Burlodge to meet its burden of proof in the infringement case, Burlodge must prove that the method of the reissued patent is being practiced by another, and that Standex had knowledge that their conduct would lead a third party to practice, or assist the third party to practice the patented method. RF Delaware, Inc. v. Pacific Keystone Technologies, Inc., 326 F.3d 1255, 1268, 66 USPQ2d 1593 (Fed. Cir. 2003) ("liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement. . . ."). Upon information and belief, Burlodge believes that the VA is practicing the methods of the Burlodge patent using the Unitron equipment purchased from Standex. Accordingly, in order to prove its case against Standex, Burlodge must gather evidence concerning whether the VA was practicing the method and whether Standex/USECO had knowledge of the same. The topics discussed in Exhibit A to the subpoena (a copy of which is included herein as Exhibit 1 for your reference) are highly relevant as they concern your client's interaction with Standex/USECO and relate to the food dispensation cycle and methods which are at the center of the patent infringement action in Burlodge's reissued patent.

Similarly, the requests for production contained in Exhibit B to the subpoena are all narrowly tailored and relate to the purchase of Unitron systems sold by Standex to your client as well as the methods employed by your client in producing and dispensing food.

Exhibit C to the subpoena is a request to inspect pursuant to Rule 45, which directly relates to inspection of the Unitron equipment at issue in the patent infringement action and how the Unitron equipment is used in the entire dispensation cycle.

We expect the deposition to take no more than three (3) hours. The inspection is expected to be minimally invasive and essentially would be a brief tour of the facilities sufficient to show the food dispensation cycle utilized by the VA in relation to the Unitron equipment. More importantly, there is a chance that the inspection/deposition may be unnecessary based on the document production. Also, a simple telephone explanation of the food dispensation method may alleviate any need for further discovery.

W.M. Thigpen
March 13, 2008
Page 2

  We hope this information is sufficient to allow you to consider the factors listed in 38 CFR Section 14.804 and determine whether the testimony and document sought inspection is allowable. If any further information is needed please contact me.

     Respectfully yours,

     Charles L. Riddle

CLR/tml
cc: Ellen Hastings

**EXHIBIT 1**

LAW OFFICES

# HARDING, EARLEY, FOLLMER & FRAILEY, P.C.

JOHN F.A. EARLEY III
FRANK J. BONINI, JR.
CHARLES L. RIDDLE

86 THE COMMONS AT VALLEY FORGE EAST
1288 VALLEY FORGE ROAD
POST OFFICE BOX 750
VALLEY FORGE, PENNSYLVANIA 19482-0750

U.S. AND
INTERNATIONAL
INTELLECTUAL
PROPERTY

| TELEPHONE | E-MAIL | FAX |
|---|---|---|
| (610) 935-2300 | heff@hardingearley.com | (610) 935-0600 |

February 19, 2008

**By Hand Delivery**
VAMC - Atlanta
Ms. Helen Brown, RD
Chief, Nutrition & Food Service
1670 Clairmont Road
Decatur, GA  30053

Re:  Standex v. Burlodge Subpoena

Dear Ms. Brown:

We are attorneys for Burlodge Limited in a patent infringement case pending in the Middle District of Tennessee.  It has come to our attention in discovery that you may possess information that may have a bearing on the pending case.  The subject matter of such is contained in the attached subpoena.

Please contact me upon receipt so we may facilitate the fulfillment of the subpoena.

Respectfully yours,

Charles L. Riddle

CLR/tml
Enclosures

cc:  Geoffrey D. Kressin, Esquire (w/ enclosures)

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### Northern District of Georgia

STANDEX INTERNATIONAL CORPORATION

V.

BURLODGE LIMITED

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 01-cv-201

`Middle District of Tennessee Nashville Division`

TO:   VAMC - Atlanta
      Ms. Helen Brown, RD, Chief Nutrition & Food Service
      1670 Clairmont Road
      Decatur, GA  30904

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   See attached Exhibit A | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

   See attached Exhibit B

| PLACE | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES     See attached Exhibit C | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 2/19/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Charles L. Riddle, Harding, Earley, Follmer & Frailey, 86 The Commons at Valley Forge East, 1288 Valley Forge Road, P.O. Box 750, Valley Forge, PA  19482-0750  Telephone:  610-935-2300

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

<u>Exhibit A</u>

<u>Place of Deposition:</u>

Hawkins & Parnell, LLP
4000 Sun Trust Plaza
303 Peachtree Street, N.E.
Atlanta, Georgia 30308-3243

Telephone:  404-614-7400

<u>Date and Time of Deposition:</u>

March 4, 2008
10:00 a.m.

<u>Topics of Deposition:</u>

1.      The meal preparation, delivery and dispensation methods employed by VAMC - Atlanta from 2000 to present.

2.      The purchase of each Unitron 7 product.

3.      Communications or correspondence between USECO (and/or Standex Corporation) and Ms. Helen Brown (and/or VAMC - Atlanta).

4.      The cost to prepare, deliver and dispense a meal.

5.      Costs billed or recovered in connection with meal preparation, delivery, and dispensation services to patients or other companies or organizations (such as a sister company, for example).

## Exhibit B

Request for Production

1.      All documents relating to the purchase of Unitron 7 equipment.

2.      All requests for proposal that let to the purchase of Unitron 7 equipment.

3.      All proposals for rethermalization systems.

4.      The file relating to the Unitron 7 system.

5.      Documents relative to systems considered in addition to the Unitron 7.

6.      Documents sufficient to show what costs are involved in preparing and dispensing a meal.

7.      Documents sufficient to establish what amounts are billed and/or recovered for meals prepared and/or dispensed with Unitron 7 equipment (or what amounts are recovered for receiving a meal prepared and dispensed by VAMC - Atlanta.

8.      Documents which evidence (or are sufficient to establish) any profit made in providing meals to customers or consumers (or other recipient of the meals (e.g., one entity to another entity)).

9.      All videos showing the Unitron 7 equipment.

<u>Exhibit C</u>

<u>Inspection of Premises:</u>

1.    All locations relating to meal preparation, delivery, and consumption.

2.    All locations where Unitron 7 equipment is used.

3.    All locations involved in meal preparation, dispensation, and the return of meal delivery equipment from the consumers to the preparation area.

4.    All locations that involve the meal delivery cycle or cycles employed by VAMC - Atlanta.

<u>Time for Inspection</u>

Inspection shall take place on March 4, 2008 at 1:00 p.m., or at a mutually agreeable time whereby the use of the Unitron 7 equipment may be viewed how the equipment is used in a complete cycle.

**EXHIBIT 2**



**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

February 28, 2008

Facsimile 610-935-0600

Charles L. Riddle
Harding, Earley, Follmer & Frailey, PC
P. O. Box 750
Valley Forge, PA 19482-0750

Re: Subpoena Duces Tecum of VA Employee
    Standex v. Burlodge Limited

Dear Mr. Riddle:

Helen Brown, RD, Chief Nutrition & Food Service, Atlanta VA
Medical Center, forwarded the subpoena you issued for her
deposition to our office for response.

The Department of Veterans Affairs is committed to
cooperating with private litigants by making VA records
available to the extent allowed by law. Unfortunately,
federal information statutes can make the process somewhat
cumbersome.

The VA promulgated regulations that established policy,
assigned responsibilities and prescribed procedures with
respect to the production or disclosure of official
information or records of the Department and the testimony
of VA personnel relating to any official information
acquired by any individual as part of that individual's
performance of official duties. 38 C.F.R. § 14.800 et seq.,
38 U.S.C. § 501(a) and (b), 5 U.S.C. § 301.

These regulations are commonly referred to as the "Touhy
Regulations" in light of *United States ex re. Touhy v.
Ragen,* 340 U.S. 462 (1951), the seminal case in this area.
[In a habeas corpus proceeding by a state prisoner, the
District Court adjudged a subordinate official of the
Department of Justice guilty of contempt for refusal to
produce papers required by a subpoena duces tecum.  The
Court of Appeals reversed.  180 F.2d 321. The Supreme Court
affirmed.]

1

Even if a case is being litigated in federal court and a Rule 45 subpoena is issued, the Touhy regulations must still be complied with if the agency is not a party to the suit. The Federal Rules of Civil Procedure do not contain a waiver of sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 589-91 (1941).

The regulations require that, in order for the agency to permit such testimony, such factors as the need to conserve the time of VA personnel for rendering required duties must be balanced against the interests of justice in the particular case. See 38 CFR § 14.804.

Pursuant to § 14.805 of Title 38 of the Code of Federal Regulations, you must provide this office with a written statement including a summary of the nature and relevance of the testimony or records sought in your legal proceedings. The statement must contain sufficient information for the responsible VA official, W. M. Thigpen, Regional Counsel, to determine whether VA personnel should be allowed to testify or records should be produced. After this office receives your written statement, then Mr. Thigpen will consider the factors listed in 38 CFR § 14.804 to determine whether to authorize the testimony.

Any VA records pertaining to Standex International Corporation may be released in accordance with the Freedom of Information Act (FOIA). 5 U.S.C. 552. We are sending your request to the FOIA Officer at the Atlanta VA Medical Center, P. J. Martin.. She will be responding directly to you.

If Mr. Thigpen approves the testimony, we ask that you reschedule the March 4, 2008 deposition, as this date will not provide enough time for VA to collect all the requested documents.

Please contact Ellen Hastings in our office with any questions or follow up matters related to the deposition and inspection of premises.

Sincerely,

W. M. THIGPEN
Regional Counsel

2

```
cc:   Helen Brown, RD
      Gerald Magnuson, HR
      Sonja Reid, QA
      P.J. Martin, FOIA Officer
```

3



**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

# FaxCoverSheet

| | | | |
|---|---|---|---|
| **To:** | Charles Riddle | **From:** | Ellen M. Hastings |
| **Fax:** | 610-935-0600 | **Pages:** | 4 |
| **Phone:** | | **Date:** | 1-28-08 |
| | | **Time:** | |

**Re:** Standex v. Burlodge Limited

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   x **Please Reply**   ☐ **Please Recycle**

● **Comments:** Thank you for your cooperation. Ellen

This message is intended only for the use of the person or office to who is addressed and may contain information that is privileged, confidential or protected by law. All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone at the above telephone number, and return the original message to us at the above address via the United States Postal Service. Thank you.

**EXHIBIT 3**

19. APR. 2001   11:28        BURLODGE LTD                                    NO. 581   P. 6

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 2 7 2001

BY _____
 ‾‾ DEPUTY CLERK

| | |
|---|---|
| STANDEX INTERNATIONAL CORPORATION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| BURLODGE LIMITED | ) |
| (owner of U.S. Pat No. 6,105,818) | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 3▬01    0201

| JUDGE ECHOLS

## COMPLAINT FOR DECLARATION OF NONINFRINGEMENT

Plaintiff, for its complaint against Defendant alleges as follows:

1.       This is an action is for a declaration of noninfringement of patent under Title 35 of the United States Code.  Subject matter jurisdiction is conferred on this court by 28 U.S.C. §§ 2201 and 2202.

2.       Plaintiff, Standex International Corporation ("Standex), is a corporation organized and existing under the laws of the State of Delaware doing business in Tennessee.  One business of the plaintiff is located in Murfreesboro, Tennessee, and is a division of Plaintiff known as USECO.

3.       The Defendant is the owner of U.S. Patent No. 6,105,818.  On information and belief, the record owner of U.S. Patent No. 6,105,818 is Burlodge Limited, an entity of the United Kingdom, who is doing business in Tennessee related to the subject matter of the patent.

4.       The owner of U.S. Patent No. 6,105,818, by and through its counsel, sent a letter to USECO in Murfreesboro, Tennessee, and thereby charged Plaintiff with infringement of United States Patent No. 6,105,818 and threatened to seek treble damages and attorneys under U.S. Patent Law.

5.       Standex denies that it has infringed U.S. Patent No. 6,105,818.

\51564CPT

WHEREFORE, Standex prays that the court declare that Standex has not infringed and is not infringing United States Patent No. 6,105,818, and grant Standex such other and further relief as the court deems just.

LUEDEKA, NEELY & GRAHAM, P.C.

By: _____

Andrew S. Neely
BPR No. 6414
Robert O. Fox
BPR No. 15185
Attorneys for Plaintiff
P. O. Box 1871
Knoxville, TN 37901-1871
(865) 546-4305

F:\56230\declaratoryjudgment.complaint.dft 2.wpd

\51564CPT

2

## NOTICE OF LAWSUIT AND REQUEST
## FOR WAIVER OF SERVICE OF SUMMONS

TO:  _____John F. A. Earley, III, Esq._____ , as

(Name of individual defendant (or name of officer or agent of corporate defendant))

_____Attorney_____ of

(Title, or other relationship of individual to corporate defendant, if applicable)

_____Burlodge Limited_____ .

(Name of corporate defendant, if any)

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed).  A copy of the complaint is attached to this notice.  It has been filed in the United States District Court for the Middle District of Tennessee and has been assigned docket number _____3-01-0201_____ .

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if I receive a signed copy of the waiver within_____ 60 days _____

(Addressee must be given at least 30 days (60 days if in foreign country) in which to return waiver)

days after the date designated below as the date on which this Notice and Request is sent.  I enclose a stamped and addressed envelope (or other means of cost-free return) for your use.  An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service.  In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth on the reverse side of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this ___12th___ day of ___March___, 2001

_____

Form 1A

Andrew S. Neely
Luedeka, Neely & Graham
P.O. Box 1871
Knoxville, TN 37901
(865)545-4305
(865)523-4478 (fax)

## DUTY TO AVOID UNNECESSARY COSTS
## OF SERVICE OF SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States, who, after being notified of any action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

# WAIVER OF SERVICE OF SUMMONS

TO: _____ Andrew S. Neely, Esq. _____

(name of plaintiff's attorney or unrepresented plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of:
_____ STANDEX INTERNATIONAL CORPORATATION v. BURLODGE LIMITED _____,

(caption of action)

which is case number _____ 3-01-0201 _____ in the United States

(docket number)

District Court for the Middle District of Tennessee. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after __March 12, 2001__,

(date request sent)

or within 90 days after that date if the request was sent outside the United States.

_____          _____
Date                                                     Signature

                                                         Printed/typed name:

                                                         John F. A. Earley, III, Esq.
                                                         _____

                                            as           Attorney
                                                         _____

                                                         (Title, if applicable)

                                            of           Burlodge Limited
                                                         _____

                                                         (Name of Corporate Defendant,
                                                         if any)

Form 1B

## WAIVER OF SERVICE OF SUMMONS

TO: _____ Andrew S. Neely, Esq. _____

(name of plaintiff's attorney or unrepresented plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of:
STANDEX INTERNATIONAL CORPORATATION v. BURLODGE LIMITED ____,

(caption of action)

which is case number ____ 3-01-0201 ____ in the United States

(docket number)

District Court for the Middle District of Tennessee. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after ___ March 12, 2001 ___,

(date request sent)

or within 90 days after that date if the request was sent outside the United States.

_____ 5-8-01 _____          _John F.A. Earley III_____

Date                                     Signature

Printed/typed name:

_____ John F. A. Earley. III, Esq. _____

as      _____ Attorney _____

(Title, if applicable)

of      _____ Burlodge Limited _____

(Name of Corporate Defendant, if any)

Form 1B

RECEIVED

MAR - 2 2001

LUEDEKA, NEELY & GRAHAM, P.C.

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 27 2001

BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

*Standex International Corp* )
)
)
v. )
)
)
*Burlodge Limited* )
)

No. 3-01 -0201

Judge

Magistrate Judge

JUDGE ECHOLS

JUDGE KNOWLES

## NOTICE OF SETTING OF INITIAL CASE MANAGEMENT CONFERENCE

Pursuant to Local Rule 11, effective January 1, 2001, notice is hereby given that the initial case management conference is scheduled before Judge *JUDGE KNOWLES*_____, Courtroom *661*_____, U.S. Courthouse, 801 Broadway, Nashville, TN, at *10:30*____, *a.* m., on *Monday*_____, *April 23*_____, 2001.

LEAD TRIAL COUNSEL FOR EACH PARTY who has been served and who has received this notice is required to attend the initial case management conference unless otherwise ordered by the case management judge. Appearance by counsel at the initial case management conference will not be deemed to waive any defenses to personal jurisdiction. Counsel are advised to bring their calendars with them to the conference for the purpose of scheduling future dates. Counsel for the filing party is also advised to notify the courtroom deputy for the Judge before whom the conference is scheduled if none of the defendants has been served prior to the scheduled conference date.

Pursuant to Local Rule 11(d), counsel for all parties shall, at the initiative of the plaintiff's counsel, confer prior to the initial case management conference as required by Fed. R. Civ. P. 26(f) to discuss the issues enumerated in Local Rule 11(d)(1)(b) and (c) and Local Rule 11(d)(2) and to determine if any issues can be resolved by agreement subject to the Court's approval. Pursuant to Local Rule 11(d)(1)b.2, counsel for all parties shall, at the initiative of plaintiff's counsel, prepare a proposed case management order that encompasses the discovery plan required by Fed. R. Civ. P. 26(f), the pertinent issues listed in section (d)(1)c and section (d)(2), and any issues that can be resolved by agreement. The proposed case management order shall be filed with the Court three (3) business days before the initial case management conference.

Effective December 1, 2000, Fed. R. Civ. P. 26(a)(1) regarding required initial disclosures applies.

**PURSUANT TO LOCAL RULE 11(d)(1), COUNSEL FOR THE PARTY FILING THIS LAWSUIT MUST SERVE A COPY OF THIS NOTICE ON THE OTHER PARTIES TO THIS LAWSUIT ALONG WITH THE SUMMONS AND COMPLAINT OR WITH THE REQUEST FOR WAIVER OF SERVICE UNDER FED. R. CIV. P. 4(d), OR WITH THE SERVICE COPY OF THE NOTICE OF REMOVAL.**

ROGER A. MILAM, CLERK
Middle District of Tennessee

cmcset.frm_

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

NOTICE

TO:      ALL COUNSEL                    DATE: *February 27, 2001*

FROM:    CLERK OF COURT

RE:      _____ v. _____

Civil Case No.   3 01 - 0 2 01 _____

This civil action is assigned to _____ **JUDGE ECHOLS** _____ and,

_**JUDGE KNOWLES**_____. Please put the District Judge's name under the

civil case number on all papers filed in this case.

Pursuant to 28 U.S.C. § 636(c), as amended, and Rule 73(b) of the Federal Rules of Civil Procedure, this Court has designated the Magistrate Judges of this District to conduct any or all proceedings in civil cases, upon consent of the parties. The parties may consent to have this civil action tried on the merits before the Magistrate Judge, either as a bench trial or a jury trial. The parties may consent to have the Magistrate Judge enter final judgment in the case or may consent to have the Magistrate Judge decide specific matters in the case, such as dispositive motions. To exercise your right to consent in this case, all parties must consent in writing by signing the attached form, Consent of the Parties. Under Rule 73(b), however, no party shall inform the District Court, the Magistrate Judge or the Clerk of any party's response, unless all parties consent. See generally Rules 72-76 of the Federal Rules of Civil Procedure.

DO NOT RETURN THE ATTACHED FORM UNLESS ALL PARTIES CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE.

If all parties agree to the assignment of this case to the Magistrate Judge, an appeal, if any, shall be taken directly to the U. S. Court of Appeals as provided in 28 U.S.C. § 636(c)(3) and Rule 73(c). Further review may be taken to the U. S. Supreme Court by writ of certiorari.

Some of the advantages of consenting to proceed before the Magistrate Judge are: (1) that it results in early and firm trial dates; (2) that it avoids any duplication in de novo review by the District Judge of the Orders or Reports and Recommendations of the Magistrate Judge who is assigned to the case; and (3) that it alleviates the increasing demands of criminal cases on the District Judges.

The Court normally allows and encourages the parties to consent at any time during the pretrial proceedings, including immediately preceding the scheduled trial.

THE PLAINTIFF(S) MUST SERVE A COPY OF THIS NOTICE ON THE DEFENDANT(S) WHEN THE COMPLAINT IS SERVED.

casentc.frm (3/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
_____ DIVISION

| | | |
|---|---|---|
| _____ Plaintiff | ) | No. _____ |
| v. | ) | |
| | ) | District Judge _____ |
| _____ Defendant | ) | Magistrate Judge _____ |

## CONSENT OF THE PARTIES

      Pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and Local Rule 301 of the Local Rules for Magistrate Proceedings,

(   )  All parties consent to have a United States Magistrate Judge conduct any and all further proceedings including the entry of judgment in this civil action OR all parties authorize the Magistrate Judge to decide the following matters:

_____

_____

**Any appeal shall be to the U. S. Court of Appeals as provided in 28 U.S.C. § 636(c)(3) and Rule 73(c).**

<u>SIGNATURES OF ALL COUNSEL OF RECORD AND ANY UNREPRESENTED PARTY ARE REQUIRED.</u>

| | |
|---|---|
| _____ | _____ |
| Attorney for Plaintiff/Plaintiff | Attorney for Defendant/Defendant |
| | |
| _____ | _____ |
| Attorney for Plaintiff/Plaintiff | Attorney for Defendant/Defendant |
| | |
| _____ | _____ |
| Attorney for Plaintiff/Plaintiff | Attorney for Defendant/Defendant |

    If necessary, attach an additional page with additional signatures of counsel or parties.

<u>DO NOT FILE THIS FORM UNLESS ALL PARTIES CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE.</u>

consent.frm (3/97)

**EXHIBIT 4**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

**F I L E D**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

**MAY 0 8 2001**

BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| STANDEX INTERNATIONAL CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Counterclaim Defendant | ) | |
| | ) | |
| | ) | Civil Action No. 3-01-0201 |
| v. | ) | |
| | ) | Judge Echols |
| BURLODGE LIMITED | ) | |
| (owner of U.S. Pat. No. 6,105,818) | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| Counterclaim Plaintiff. | ) | |

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant, Burlodge Limited, by and through its undersigned counsel, responds to the Complaint for Declaration of Non-Infringement as follows:

1.    Admitted that this purports to be an action for a declaration of non-infringement of patent under Title 35 of the United States Code, and that Standex invokes subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202.

2.    Defendant is without sufficient knowledge or information as to admit or deny this allegation.

3.    Admitted.

4.    Admitted that the owner of US Patent 6,105,818, by and through its counsel, sent a letter to USECO in Murfreesboro, Tennessee, and charged Plaintiff with infringement of US Patent 6,105,818. As to other allegations, the letter speaks for itself.

5.    Admitted that Standex International Corporation ("Standex") denies that it has infringed US Patent 6,105,818.

## FIRST AFFIRMATIVE DEFENSE

Standex's claim fails to state a claim upon which relief can be granted.

## DEFENDANT'S COUNTERCLAIM FOR INFRINGEMENT OF US PATENT 6,105,818

6.    The allegations of paragraphs 1-5 are repeated and incorporated herein by reference.

## NATURE OF THE ACTION

7.    This is a civil action for patent infringement under the patent laws of the United States including 35 U.S.C. sections 271, 281, 283, 284 and 285.

## JURISDICTION

8.    Subject matter jurisdiction over this action is proper in this Court under 28 U.S.C. section 1331 and 1338(a).

## VENUE

9.    Venue is proper in this district under 28 U.S.C. sections 1391 and 1400(b).

## THE PARTIES

10.    Burlodge Limited is a foreign corporation headquartered in the United Kingdom.

11.    On information and belief, Standex International Corporation ("Standex") is a corporation organized and existing under the laws of the State of Delaware doing business in Tennessee, and one business of Plaintiff is located in Murfreesboro, Tennessee, and is a division of Standex known as USECO.

## COUNT I - PATENT INFRINGEMENT

12.     The allegations of paragraphs 1-11 are repeated and incorporated herein by reference.

13.     Burlodge Limited is, and has been from the time of issuance of US Patent 6,105,818, the owner of said US Patent 6,105,818 which is, and at all times has been, valid and enforceable.  A true and correct copy of Burlodge Limited's US Patent 6,105,818 is attached hereto as Exhibit 1.

14.     US Patent 6,105,818 is for a "Food Dispensing Cycle and Means" and contains a single method claim.

15.     On information and belief, Standex has infringed Burlodge Limited's US Patent 6,105,818.

16.     On information and belief, Standex's infringement has been willful and deliberate.


WHEREFORE, Burlodge prays:

a.     For an injunction prohibiting Standex and its agents, employees and those acting in concert with them, from infringing Burlodge's Patent in any manner;

b.     For an order directing that all materials which are in the possession, custody, or control of Standex which are alleged to infringe Burlodge's Patent be delivered to the Court for impoundment during the pendency of this action;

c.     For an award of damages in an amount sufficient to compensate Burlodge for the acts of patent infringement committed by Standex;

d.      For an award of Standex's profits and/or Burlodge's damages resulting from Standex's patent infringement at least including a reasonable royalty;

e.      For an award of treble damages due to the intentional and willful violation of Burlodge's rights under U.S. Patent law;

f.      For an assessment of costs and award of Burlodge's reasonable attorney's fees in prosecuting this action against Standex; and

g.      For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Edward D. Lanquist, Jr., Esq.
Emily A. Shouse, Esq.
Waddey & Patterson
Bank of America Plaza
414 Union Street
Suite 2020
Nashville, TN 37219
(615) 242-2400

Attorneys for Defendant


Of Counsel:

John F.A. Earley III, Esquire
Frank J. Bonini, Jr., Esquire
HARDING, EARLEY, FOLLMER & FRAILEY
86 The Commons at Valley Forge E.
1288 Valley Forge Road
P.O. Box 750
Valley Forge, PA 19482
(610) 935-2300

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Answer was sent to the address below via first class mail, postage prepaid, on May 8, 2001.

Andrew S. Neely
Luedeka, Neely & Graham
P.O. Box 1871
Knoxville, TN 37901

_____
Edward D. Lanquist, Jr.

**EXHIBIT 5**



US00RE39551E

(19) **United States**
(12) **Reissued Patent**
Speranza

(10) Patent Number: **US RE39,551 E**
(45) Date of Reissued Patent: **Apr. 10, 2007**

(54) **FOOD DISPENSING CYCLE AND MEANS**

(75) Inventor: **Angelo Speranza**, Surbiton Surrey (GB)

(73) Assignee: **Burlodge Limited**, Surrey (GB)

(21) Appl. No.: **09/928,546**

(22) PCT Filed: **May 8, 1996**

(86) PCT No.: **PCT/GB96/01097**

§ 371 (c)(1),
(2), (4) Date: **Feb. 19, 1997**

(87) PCT Pub. No.: **WO96/35362**

PCT Pub. Date: **Nov. 14, 1996**

**Related U.S. Patent Documents**
Reissue of:
(64) Patent No.: **6,105,818**
Issued: **Aug. 22, 2000**
Appl. No.: **08/776,097**
Filed: **Feb. 19, 1997**

(30) **Foreign Application Priority Data**

May 9, 1995 (GB) ............................................. 9509375

(51) Int. Cl.
*A47J 39/00*   (2006.01)

(52) U.S. Cl. ...................... **221/1; 221/150 R; 312/236; 165/918; 219/386**

(58) Field of Classification Search ...................... 221/1, 221/150 R, 150 HC; 312/236, 249.8, 249.11; 219/385, 386, 387; 165/918
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,261,650 A | * | 7/1966 | Stromquist | 312/236 |
| 3,275,393 A | * | 9/1966 | Stentz et al. | 312/214 |
| 3,517,899 A | * | 6/1970 | Vernon | 244/118.5 X |
| 3,608,770 A | * | 9/1971 | Naimoli | 426/114 X |
| 3,719,408 A | | 3/1973 | Fullington et al. | 312/236 |
| 3,752,550 A | | 8/1973 | Niemeyer | 312/237 |
| 3,759,661 A | | 9/1973 | Barsby | 432/241 |
| 3,834,865 A | | 9/1974 | Lee | 312/236 |
| 4,005,745 A | * | 2/1977 | Colato et al. | 312/236 |
| 4,103,736 A | * | 8/1978 | Colato et al. | 312/236 |
| 4,156,456 A | * | 5/1979 | Müller | 165/48 R |
| 4,203,486 A | * | 5/1980 | Rubbright et al. | 165/48 R |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 43 23 189 A1 | 11/1994 |
| FR | 2 508 303 | 12/1982 |
| GB | 1 257 896 | 12/1971 |
| GB | 2 209 206 A | 5/1989 |

*Primary Examiner*—Eileen D. Lillis
(74) *Attorney, Agent, or Firm*—Davis & Bujold, P.L.L.C.

(57) **ABSTRACT**

A method of dispensing food whereby food prepared at a first location is transported to a second location for dispensing in a working cycle characterized by the steps of apportioning the food onto a plurality of trays (20A, 20B) at the first location, loading the plurality of trays (20A, 20B) into a rack (15) to give, in combination, a spaced array of loaded trays; the spaced array having predetermined overall dimensions; transporting the spaced array to an intermediate location, placing the loaded rack into a containment (11) with an internal volume (12) of sufficient size to receive at least one spaced array; transporting the containment along with its spaced array or arrays to the second location; regenerating food in the spaced array while within the containment; dispensing loaded trays (20A, 20B) from the spaced array; and returning the racks (15) back to the first or some other location for re-use. Apparatus for dispensing food comprising a containment (11) adapted to receive at least, one removable rack (15), the rack being adapted to contain at least two removable trays (20A, 20B) for food for regeneration.

**20 Claims, 2 Drawing Sheets**



# US RE39,551 E
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,254,824 A | * | 3/1981 | Springer ..................... 312/236 |
| 4,285,391 A | * | 8/1981 | Bourner ...................... 165/30 |
| 4,323,110 A | * | 4/1982 | Rubbright et al. ............. 165/2 |
| 4,384,191 A | * | 5/1983 | Guibert ................ 219/385 X |
| 4,397,159 A | | 8/1983 | Dodd ......................... 312/236 |
| 4,544,024 A | | 10/1985 | Baggott ...................... 165/48 |
| 5,069,273 A | | 12/1991 | O'Hearne ................... 312/236 |
| 5,086,834 A | | 2/1992 | Grandi ....................... 165/135 |
| 5,159,973 A | * | 11/1992 | Pennington et al. .... 312/236 X |
| 5,182,438 A | | 1/1993 | Oakes et al. ................. 219/386 |
| 5,221,023 A | | 6/1993 | Dubik .......................... 221/1 |
| 5,240,320 A | * | 8/1993 | Yerman ................. 312/236 X |
| 5,285,051 A | | 2/1994 | DeGrow et al. ............ 219/386 |
| 5,393,960 A | | 2/1995 | Beizermann ................ 219/729 |
| 5,403,997 A | | 4/1995 | Wimpee et al. ............. 219/386 |
| 5,404,935 A | | 4/1995 | Liebermann ................ 312/236 |

* cited by examiner



FIG.1



FIG.2

(AMENDED)



**FIG.3** (AMENDED)

US RE39,551 E

1

# FOOD DISPENSING CYCLE AND MEANS

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

## TECHNICAL FIELD

This invention relates to a food dispensing cycle and means for undertaking it.

## BACKGROUND ART

The dispensing of food in large organisations frequently involves the preparation of food at a first location followed by its being moved and then dispensed at a second location. At the first location the food is prepared and then divided into individual portions on a utensil, such as a plate or bowl, which will be presented to an intended consumer at the second location. Given the prepared utensil is loaded with food at the first location there arise the need to ensure that the food is kept at a storage temperature where deterioration will be minimised or eliminated until a regeneration step is undertaken to ensure that the consumer receives the food on its utensil without having been contaminated in some way, in a good and visually attractive condition and at the correct temperature. To meet this requirement it is commonly the practice to make use of mobile trolleys at the second location into which trays of prepared food from the first location are placed and a regenerative cycle is then undertaken either by way of heating/cooling means in the trolley or to which the trolley can be linked.

GB Patent 1527 119 shows a mobile container having an insulated outer case which is insulated and divided into compartments each containing a set of tray supports in the form of upper and lower flanges each side and at the back. Each tray has locations for holding in the supports and several apertures along the sides. These hold bowls provided with covers for the hot food. Underneath each row of apertures is a heating element on which the bowls sit raised above the tray surface but retained by raised portions on tray and bowls. The compartment is otherwise refrigerated the remainder of the tray area being taken up by cold food. This arrangement requires special trays and heaters and does not readily lend itself to food regeneration processes. It also does not provide readily for a change in the area of the tray subject to heating as distinct from cooling or for maintenance at a temperature approximating to ambient temperature in the region of the trolley.

## DISCLOSURE OF INVENTION

According to a first aspect of the present invention there is provided a method of dispensing food whereby wherein food prepared at a first location is transported to a second location for dispensing in a working cycle characterised by

1 apportioning the food onto a plurality of trays at the first location;

2 loading the plurality of trays into a rack to give, in combination, a spaced array of loaded trays the spaced array having predetermined overall dimensions;

3 transporting the spaced array to an intermediate location;

4 placing the spaced array into a containment with an internal volume of sufficient size to receive at least one spaced array;

5 transferring the containment along with its spaced array or arrays to the second location;

2

6 regenerating food in the spaced array while within the containment,

7 dispensing food from trays in the spaced array;

8 returning the racks back to the first, or some other, location for re-use.

According to a first preferred version of the first aspect of the present invention the step of regenerating food is undertaken by way of heating and/or cooling means located in the containment.

According to a second preferred version of the first aspect of the present invention the step of regenerating food is undertaken by way of heating and/or cooling means demountably coupled to the containment.

According to a third preferred version of the first aspect of the present invention or any preceding preferred version thereof the containment is mobile.

According to a second aspect of the present invention there is provided apparatus for dispensing food comprising a containment adapted to receive at least one removable rack, the rack being adapted to contain at least two removable tray for food regeneration.

## BRIEF DESCRIPTION OF DRAWINGS

An exemplary embodiment of the invention will now be described with reference to the accompanying drawings which show a method of dispensing food and equipment therefore of which:

FIG. 1 is a perspective view of a trolley,

FIG. 2 is a perspective view of a rack and trays for incorporation in the trolley of FIG. 1; and

FIG. 3 is a block diagram showing the steps involved in the method.

## MODES FOR CARRYING OUT THE INVENTION

FIG. 1 shows a mobile trolley 11 for food regeneration which has an interior volume 12 having dimensions: length L, height H and depth D. The interior volume 12 is accessed through aperture 13 can be closed by doors 14A, 14B. The interior volume 12 is substantially free of an obstructions and is of a size and shape to accommodate two racks described in connection with FIG. 2. The trolley is equipped with castors W to enable it to be readily moved.

FIG. 2 shows a rack 15 is made up of corner posts 16 to 19 linked by pairs of horizontally opposed rail pairs A, A' to F, F'. Mid posts M1, M2 serve to divide the interior parts of the rack into two vertical halves and to support the inner. Each pair of rails serves to accommodate a pair of trays. Typically rails C, C' support trays 20A, 20B. The rail pairs A, A' to F, F' are spaced so as to provide clearance above each tray enabling each tray to hold food for an eventual consumer. The rack 15 is of sufficient strength and rigidity to support without distortion a full complement of tray pairs each tray being loaded with foodstuff so that the rack and trays (along with their contents) constitute a racked array. The outside dimensions of the array: width X, height Y and depth Z are slightly smaller than the interior dimensions L, H, D of the trolley so that two loaded racks are a snug fit within the interior volume 12 of the trolley 11 so that the rack 15 is prevented from excessive movement relative to the trolley 11.

The trolley 11 has an end section 21 which contains an electrically powered heater and fan to enable air at a predetermined temperature to circulated within the interior volume 12, or a part thereof as defined by baffles within the

US RE39,551 E

| 3 | 4 |

trolley or located on each tray. This enables food on each tray, or a particular part of each tray, to be warmed in accordance with a predetermined program established by way of a control panel 22. The trolley 11 also has an end section 23 which contains a refrigerating unit and fan to provide for air to be cooled and circulated over a region of each tray where food is to be maintained cool. The trolley 11 can be plugged into a power supply by way of lead 24 to enable the heating and cooling systems to be operated.

The method of operation of the food dispensing system will now be considered with particular reference to FIG. 3.

Supply location 30 represents a food preparation area (*the first location*) for supplying a number of consumer sites (*the second location*) 31, 32, 33 which are in this case hospitals which are some distance from each other and from supply location 30. The supply location 30 receives raw materials and supplies by path [W] *RM*. At the supply location 30 food is prepared, cooled and plated and individual amounts for an individual consumer at one of the consumer sites are placed on a tray. Trays for delivery to a particular consumer location 31 are placed on one or more racks 15 as described in relation to FIG. 1. The racked arrays are then loaded into a refrigerated transfer vehicle 35 whereby the food is transferred to location 31. The *transfer* vehicle 35 is equipped with a load space incorporating suitable cooling means to ensure that trays of food in each rack does not exceed predetermined limits.

The transfer vehicle 35 then delivers along path S the racked arrays bearing the food to consumer site 31. At an intermediate location 34 at the site each racked array is unloaded from the *transfer* vehicle 35 and loaded into a regeneration trolley[s] *11* of the type described in connection with FIG. 1. The loaded trolley *11* is then moved closer to the location of the eventual consumers of the contents of the trolley *11*. The trolley *11* is connected to a power supply and is then powered up to enable the food content of the racked array to be automatically regenerated according to a predetermined program held in the control unit of the trolley *11*. Once regeneration has been completed the trolley *11* is opened and the trays and their contents distributed to the recipients.

Once consumption of the food has been completed the trays are returned to the racks 15 in the trolley *11*. The trolley *11* is then transferred to the intermediate location 34 at the consumer site where the racks 15 loaded with the now used trays are transferred from the trolley *11* into a *transfer* vehicle 35 which returns the used trays and utensils to the supply location 30 for cleaning and reloading.

If necessary a vehicle can deliver racks bearing food for consumption over a period of time. In such a case given that sufficient regeneration trolleys are available then the trolleys can all be loaded and programmed to ensure that regeneration occurs at appropriate times. Alternatively if sufficient trolleys are not available then the loaded racks can be kept in some form of chilled storage.

Satellite sites 32, 33 are supplied in a similar way to that described for site 31.

It will be apparent that the method of the embodiment enables equipment to be utilised efficiently and to reduce the need for expensive regeneration trolleys to be transported outside the site where they are used. Each site thus retains control of its own regeneration trolleys. The only items needing to be transported between supply site 30 and the consumer sites 31, 32, 33 are the racks bearing the trays and two or three racks are substantially cheaper than a regeneration trolley. A single regeneration trolley can be used for

a given location, say a word, to provide meals for, say three, eating periods in a day. The trolley is initially charged with racks bearing loaded trays and a regeneration cycle completed prior to food being distributed for the first meal. This cycle can readily be repeated for two further meal periods since all that is required is the removal of racks with emptied trays, cleaning and recharging with a fresh set of racks with food bearing trays. Cleaning is readily undertaken since the interior of a trolley utilising the racks of the present invention contain little apart from the wall, and top and bottom surfaces.

A supply site 30, possibly many miles from one or more consumer sites, can be equipped, staffed and operated to take advantage of economies of scale and so supply consumer sites more efficiently than would be possible where each consumer site has its own food preparation and distribution system. In addition the transportation of more racks than regeneration trolleys can beundertaken in a given vehicle. At the supply site the cleaning and storage of racks and the loading of racks with charged trays involves smaller storage and handling areas at the supply site than would be possible where charged trays have to be loaded into regeneration trolleys recovered from the or each consumer site.

What is claimed is:

1. A method of preparing, transporting and dispensing food between a series of remote locations, the method comprising the steps of:

preparing the food for consumption at a first location;

apportioning the food onto a plurality of trays at the first location;

stacking the trays in a manually maneuverable rack, and providing the rack with a predetermined stacking arrangement of particular dimensions;

loading the maneuverable rack onto a refrigerated vehicle for transportation to a second remote location;

transferring the maneuverable rack, at the second location, into a moveable receptacle comprising at least one of heating and cooling means, and the receptacle being configured to receive at least one of the plurality of racks;

relocating the moveable receptacle to a desired position;

activating at least one of the heating and cooling means prior to dispensing of the food trays to consumers;

dispensing the food trays to the consumers for consumption;

collecting and re-stacking the trays in the rack situated within the receptacle;

removing the at least one maneuverable rack [form] *from* the moveable receptacle for transportation of the rack back to the first location.

2. *A method of preparing and transporting food for rethermalization comprising the steps of:*

*at a first location:*

*preparing food;*

*apportioning the prepared food onto a plurality of trays;*

*loading the plurality of trays, bearing the apportioned food, onto a manually maneuverable rack for receiving and supporting the plurality of trays in a predetermined alignment;*

*providing a refrigerated transfer vehicle for transporting the rack, loaded with the plurality of trays bearing the apportioned food, from the first location to a second location spaced from the first location;*

*loading the rack, stacked with the plurality of trays, onto a refrigerated transfer vehicle for transportation to a second location;*

US RE39,551 E

| 5 | 6 |

transporting the rack, containing the plurality of trays bearing the apportioned food, in the transfer vehicle to the second location;

at the second location:

transferring the rack from the transfer vehicle to a moveable receptacle at the second location; and

rethermalizing the apportioned food while the plurality of trays are supported by the rack at the second location.

3. The method as claimed in claim 2, further comprising the step of, following sufficient regeneration of the apportioned food at the second location, distributing the plurality of trays bearing the apportioned food to a consumer for consumption.

4. The method as claimed in claim 3, further comprising the step of utilizing the rack to recover the plurality of trays from the consumer, following consumption of a desired portion of the apportioned food by the consumer.

5. The method as claimed in claim 4, further comprising the step of, following recovery of the plurality of trays from the consumer, transporting the recovered plurality one of trays back to the first location via use of the rack.

6. The method as claimed in claim 2, further comprising the step of using the moveable receptacle to dispense the plurality of trays, containing the apportioned food, to consumers for consumption with the rack contained within the moveable receptacle during dispensing of the plurality of trays.

7. The method as claimed in claim 6, further comprising the step of, following consumption of the apportioned food by the consumers, collecting the plurality of trays with the rack located within the movable receptacle.

8. The method as claimed in claim 7, further comprising the steps of:

removing the rack from the movable receptacle following collection of the plurality of trays; and

returning the plurality of trays and the rack back to the first location for reuse while leaving the receptacle at the second location.

9. The method as claimed in claim 2, further comprising the step of using a mobile trolley incorporating heating/cooling means as the receptacle to facilitate rethermalization of the apportioned food on the plurality of trays.

10. The method as claimed in claim 2, further comprising the step of using one of:

a mobile trolley incorporating heating/cooling means as the receptacle;

the mobile trolley coupled in operable combination with a separate heating cooling means; and

the heating cooling means to facilitate rethermalization of the apportioned food on the plurality of trays.

11. The method as claimed in claim 2, further comprising the step of loading the plurality of trays, each bearing apportioned food, onto the rack prior to transporting the rack, loaded with the plurality of trays bearing the apportioned food, to the second location by way of a transport vehicle.

12. The method as claimed in claim 2, further comprising the step of placing the transported rack, loaded with the plurality of trays bearing the apportioned food, in storage prior to rethermalizing the apportioned food of the plurality of trays.

13. A method of preparing and transporting food for rethermalization comprising the steps of:

apportioning food onto a plurality of trays;

at a first location:

loading the plurality of trays bearing the apportioned food onto a manually maneuverable rack for receiving and supporting the plurality of trays;

loading the rack, containing the plurality of trays, onto a refrigerated transport vehicle for transportation to a remote location from the first location;

transporting the rack, containing the plurality of trays bearing the apportioned food, in the transport vehicle to the remote location;

at the remote location;

after the rack has been transported to the remote location in the transport vehicle, transferring the rack from the transfer vehicle to a moveable receptacle;

the receptacle being configured to receive at least one rack; and

activating at least one of a heating system and a cooling system to regenerate the apportioned food on the plurality of trays on the rack that is positioned in the receptacle.

14. The method of claim 13, the rack, having a predetermined stacking arrangement of particular dimensions.

15. The method as claimed in claim 13, the heating system and the cooling system being either located in the receptacle or being demountably coupled to the receptacle.

16. The method as claimed in claim 13, further comprising the step of:

dispensing the plurality of trays bearing the apportioned food to a consumer for consumption of the food.

17. The method as claimed in claim 16, further comprising the step of:

collecting the plurality of trays after the plurality of trays have been dispensed to a consumer for consumption of the food.

18. The method as claimed in claim 17, further comprising the step of:

returning the plurality of trays and the rack to the first location.

19. The method of claim 13, the manually maneuverable rack lacking any heating and cooling means and the moveable receptacle having a heating means and a cooling means.

20. The method of claim 13, further including the step of relocating the moveable receptacle to a desired location after the rack has been transferred from the transfer vehicle to the moveable receptacle.

* * * * *

**EXHIBIT 6**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

STANDEX INTERNATIONAL          )
CORPORATION,                   )
                               )
        Plaintiff,             )
                               )
vs.                            ) Civil Action No.
                               ) 3-01-0201
BURLODGE LIMITED,              ) Judge Robert L.
                               ) Echols
        Defendant.             ) Magistrate Judge
_____) E. Clifton Knowles

DEPOSITION OF:

THOMAS K. TAYLOR

Taken on behalf of the Plaintiff

February 12, 2008

_____

VOWELL & JENNINGS, INC.
Court Reporting Services
207 Washington Square
214 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

---

1  APPEARANCES:

2  For the Plaintiff:

3  FRANK J. BONINI, JR.
   Harding, Earley, Follmer & Frailey
4  86 The Commons at Valley Forge East
   1288 Valley Forge Road
5  P.O. Box 750
   Valley Forge, Pennsylvania, 19482-0750
6  610.935.2300
   fbonini@hardingearley.com
7

8  For the Defendant:

9  GEOFFREY D. KRESSIN
10 Luedeka, Neely & Graham, P.C.
   900 S. Gay Street, Suite 1871
11 Knoxville, Tennessee, 37902-1864
   865.546.4305
12 gkressin@LNG-patent.com

13

14 PAUL W. AMBROSIUS
   Trauger & Tuke
15 The Southern Turf Building
   222 4th Avenue North
16 Nashville, Tennessee, 37219-2117
   615.256.8585
17 pambrosius@TNTLaw.net

18

19

20

21

22

23  ORIGINAL

24

25

---

1              I N D E X

2  WITNESS:  THOMAS K. TAYLOR

3          INDEX OF EXAMINATIONS

4
                                    Page/Line
5
   Confidential Material            29    01
6  through                          31    25
7  Examination by Mr. Boniglio      05    03
   Errata Sheet                     201   01
8

9

10         INDEX OF EXHIBITS

11 No. T-1                          15    19
   No. T-2                          22    06
12 No. T-3                          48    13
   No. T-4                          59    01
13 No. T-5                          68    20
   No. T-6                          79    22
14 No. T-7                          85    04
   No. T-8                          94    06
15 No. T-9                          120   06
   No. T-10                         125   04
16 No. T-11                         131   06
   No. T-12                         137   25
17 No. T-13                         141   13
   No. T-14                         145   10
18 No. T-15                         146   24
   No. T-16                         150   18
19 No. T-17                         156   20
   No. T-18                         162   06
20 No. T-19                         164   10
   No. T-20                         169   15
21 No. T-21                         169   15
   No. T-22                         172   20
   No. T-23                         191   12

23

24

25

---

1        The deposition of THOMAS K. TAYLOR, taken

2  on behalf of the Plaintiff, on the 12th day of

3  February, 2008, in the offices of Waddey &

4  Patterson, 1600 Division Street, Suite 500,

5  Nashville, Tennessee, 37219, for all purposes

6  under the Federal Rules of Civil Procedure.

7        The formalities as to notice, caption,

8  certificate, et cetera, are waived.  All

9  objections, except as to the form of the

10 questions, are reserved to the hearing.

11       It is agreed that Deborah J. Harris, being

12 a Notary Public and Court Reporter for the

13 State of Tennessee, may swear the witness, and

14 that the reading and signing of the completed

15 deposition by the witness are reserved.

16

17

18
                    *   *   *
19

20

21

22

23

24

25

1  of the -- what would be another salesperson
2  contact after the system was set up?  Why would
3  the customer call the salesperson again?
4      A    It would depend on the contract that
5  we entered into with them.  And that was
6  usually driven by their specifics in the RFP
7  for the software.
8      But it wouldn't be unusual for us to go
9  back 90 days after they had implemented the
10  system to take a snapshot of where they were,
11  make some changes people-wise, plating-wise,
12  production-wise, and leave again, come back in
13  six months, come back at the end of the year.
14      Q    Is it fair to say that USECO would
15  know what its customers were doing with the
16  equipment?
17      A    Absolutely.
18      Q    Okay.  And did the customer contact
19  the salesperson to purchase, say, additional
20  trays or replacement parts or would they
21  contact someone else?
22      A    That would probably go through
23  customer service.
24      Q    Did the sales -- to your best
25  recollection and knowledge, did the sale of a

1  Unitron 7 ever result in the sale of another
2  Unitron -- sorry, another USECO product?
3      A    We tried to make that happen every
4  instance we made a sale.
5      Q    What were some of the other products
6  that a customer might be able to use?
7      A    Blast chiller, top of the list.  Cold
8  tray lines, second.  Carts of various types.
9  Dollies.  The list is endless.
10      Q    Now, is this a result of switching
11  over from a hot meal system, the fact that you
12  could -- it would then open the market up to
13  sell these other --
14      A    The blast chiller would not be
15  necessary when they were still doing hot
16  plating.  A cold tray line would not be
17  necessary if they were doing hot plating.  So,
18  yes.  The answer to your question is yes.
19      Q    Was there an Alani Hospital?
20      A    I think there may have been, but I
21  don't know whether we were awarded that job or
22  not without looking at the list.
23      Q    Were you involved in that -- in any
24  activity to sell a system to Alani Hospital?
25      A    I can't remember.

1      Q    Okay.  Do you know Pam Oldham?
2      A    Oldham?
3      Q    Yes.
4      A    No.
5      Q    Jody Locker?
6      A    No.
7      Q    Did any of the Veteran's Hospitals
8  purchase Unitron 7's?
9      A    Atlanta.
10      Q    Atlanta VA.  And was that multiple
11  locations?
12      A    I can't recollect.  I don't think so.
13      Q    Who was responsible or who was the
14  salesperson responsible for that sale?
15      A    That may have been Sarah Hurt.  It
16  was going to either be Sarah Hurt or Mari
17  Herdine.
18      Q    Mr. Taylor, looking at replacement
19  parts would typically be the most common after
20  the sale of the Unitron 7?
21      A    It would really be a function of
22  which system was sold.
23      Q    Did the Unitron 7 have different
24  configurations?
25      A    It was significantly different.  The

1  Unitron 5 had no relationship to the Unitron 3.
2      Q    Did the Unitron 7 have different
3  configurations that a customer could purchase
4  as options?
5      A    Only in terms of number of tray sizes
6  or the number of trays that could go into a
7  cart.
8      Q    Anything else that it would have?
9      A    No.  Well, I take that back.  It
10  could have a tow hitch.
11      Q    The system, I have seen that before;
12  what do you consider the Unitron 7 system?
13      A    Sorry, I don't understand.
14      Q    What do you consider if I purchase --
15      MR. KRESSIN:  Do you mean parts to
16  make.--
17  BY MR. BONINI:
18      Q    The parts that make up the Unitron 7
19  system, what would I have to purchase?
20      A    You would have to purchase a
21  compressor and a condensing unit and some
22  heating elements and all of the componentry to
23  drive that from an electrical standpoint.
24  Castors.
25      Q    And that would be it?



**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

February 28, 2008

Facsimile   610-935-0600

Charles L. Riddle
Harding, Earley, Follmer & Frailey, PC
P. O. Box 750
Valley Forge, PA 19482-0750

Re: Subpoena Duces Tecum of VA Employee
Standex v. Burlodge Limited

Dear Mr. Riddle:

Helen Brown, RD, Chief Nutrition & Food Service, Atlanta VA
Medical Center, forwarded the subpoena you issued for her
deposition to our office for response.

The Department of Veterans Affairs is committed to
cooperating with private litigants by making VA records
available to the extent allowed by law. Unfortunately,
federal information statutes can make the process somewhat
cumbersome.

The VA promulgated regulations that established policy,
assigned responsibilities and prescribed procedures with
respect to the production or disclosure of official
information or records of the Department and the testimony
of VA personnel relating to any official information
acquired by any individual as part of that individual's
performance of official duties. 38 C.F.R. § 14.800 et seq.,
38 U.S.C. § 501(a) and (b), 5 U.S.C. § 301.

These regulations are commonly referred to as the "Touhy
Regulations" in light of *United States ex re. Touhy v.
Ragen,* 340 U.S. 462 (1951), the seminal case in this area.
[In a habeas corpus proceeding by a state prisoner, the
District Court adjudged a subordinate official of the
Department of Justice guilty of contempt for refusal to
produce papers required by a subpoena duces tecum.  The
Court of Appeals reversed.  180 F.2d 321. The Supreme Court
affirmed.]

1

Even if a case is being litigated in federal court and a Rule 45 subpoena is issued, the Touhy regulations must still be complied with if the agency is not a party to the suit. The Federal Rules of Civil Procedure do not contain a waiver of sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 589-91 (1941).

The regulations require that, in order for the agency to permit such testimony, such factors as the need to conserve the time of VA personnel for rendering required duties must be balanced against the interests of justice in the particular case. See 38 CFR § 14.804.

Pursuant to § 14.805 of Title 38 of the Code of Federal Regulations, you must provide this office with a written statement including a summary of the nature and relevance of the testimony or records sought in your legal proceedings. The statement must contain sufficient information for the responsible VA official, W. M. Thigpen, Regional Counsel, to determine whether VA personnel should be allowed to testify or records should be produced. After this office receives your written statement, then Mr. Thigpen will consider the factors listed in 38 CFR § 14.804 to determine whether to authorize the testimony.

Any VA records pertaining to Standex International Corporation may be released in accordance with the Freedom of Information Act (FOIA). 5 U.S.C. 552. We are sending your request to the FOIA Officer at the Atlanta VA Medical Center, P. J. Martin. She will be responding directly to you.

If Mr. Thigpen approves the testimony, we ask that you reschedule the March 4, 2008 deposition, as this date will not provide enough time for VA to collect all the requested documents.

Please contact Ellen Hastings in our office with any questions or follow up matters related to the deposition and inspection of premises.

Sincerely,

W. M. THIGPEN
Regional Counsel

```
cc:   Helen Brown, RD
      Gerald Magnuson, HR
      Sonja Reid, QA
      P.J. Martin, FOIA Officer
```





**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

# Fax Cover Sheet

| | | | |
|---|---|---|---|
| **To:** | Charles Riddle | **From:** | Ellen M. Hastings |
| **Fax:** | ·610-935-0600 | **Pages:** | 4 |
| **Phone:** | | **Date:** | 1-28-08 |
| | | **Time:** | |

**Re:** Standex v. Burlodge Limited

☐ **Urgent**  ☐ **For Review**  ☐ **Please Comment**  x **Please Reply**  ☐ **Please Recycle**

● **Comments:** Thank you for your cooperation. Ellen

This message is intended only for the use of the person or office to who is addressed and may contain information that is privileged, confidential or protected by law. All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone at the above telephone number, and return the original message to us at the above address via the United States Postal Service. Thank you.



**DEPARTMENT OF VETERANS AFFAIRS**
Office of the General Counsel
Washington DC 20420



JUL 1 4 2008

In Reply Refer To:      024M

Harding, Earley, Follmer & Frailey, P.C.
<u>Attn: Charles L. Riddle, Esq.</u>
86 The Commons At Valley Forge East
1288 Valley Forge Road
Post Office Box 750
Valley Forge, PA  19482-0750

Re:  <u>Standex Int'l Corp. v. Burlodge Ltd.</u>, USDC M.D. Tenn. Case No. 01-cv-201
     Subpoena to United States Department of Veterans Affairs

Dear Mr. Riddle:

    I am writing in response to your June 30, 2008, letter to this office relating to the subpoena *duces tecum* that you had served on the Office of the General Counsel in the Department of Veterans Affairs (VA), Washington, D.C.  The VA declines to participate in this matter as fully set out below.

    This is a patent infringement action between private parties in which your client alleges that Standex International Corporation has "contributed to the infringement, or induced the infringement of Burlodge's reissue patent by selling equipment and providing the know-how to use this equipment" to the VA (quoting your March 13, 2008, letter you enclosed to this office).  In essence, therefore, your client alleges infringement of the reissue patent by the VA, a third party to the lawsuit at this time.  Your subpoena to the VA seeks testimony in the manner of a Rule 30(b)(6) deposition on five topics going back what could be years, as well as seeking production of nine broad categories of documents and an inspection of premises.  By your June 30, 2008 letter you have supplemented the requested discovery to require information relating to any alleged infringement of the reissue patent at forty-one (41) VA Medical Centers around the country.

    After reviewing the subpoena, the above referenced correspondence, I consulted with VA personnel in Veterans Affairs Central Office (VACO), in Washington, D.C., and reviewed the Department's *Touhy* Regulations, found at 38 C.F.R. § 14.800 to 14.810, and consulted with the Department of Justice, before reaching my conclusion.  Based upon my review and consultations, I have concluded not to authorize the disclosure of VA records or the testimony of VA personnel in response to your demand.

2.

Charles L. Riddle, Esq.

In making this decision, I have considered the factors delineated in 38 C.F.R. § 14.804, as I am required to do. Subsections 14.804(a), (b), (d), (h), (l) and (o) each militate against disclosure. Permitting this discovery would be detrimental to the VA in that the VA would be required to "spend the time and money of the United States for private purposes," which would reduce "the time of VA personnel [needed] for conducting their official duties concerning servicing the Nation's veteran population." Id. § 14.804(a). The "testimony or production of records" also would not "assist VA in performing its statutory duties." Id. § 14.804(b). Further, the demand is unduly burdensome in its scope, seeking documents over what could be a multiyear period, Rule 30(b)(6) type deposition testimony, a physical inspection of VA facilities, and an analysis of the methodology utilized at more than forty VA Medical Centers to prepare and deliver food to patients. Id. § 14.804(d). For the reasons outlined above, the testimony also would be inappropriate under the circumstances in light of your reference to alleged patent infringement by the VA, Id. §§ 14.804(h), (o), under which it reasonably could be considered simply a fishing expedition for pre-filing discovery against the VA in a contemplated infringement action. Finally, the requested discovery is not related to furthering the VA's mission of servicing the Nation's veterans. Id. § 14.804(l).

Sincerely yours,

Deborah K. McCallum
Assistant General Counsel

cc: 19E

## Inquiry Table

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Mont/Tuskg | | | |
| VAMC Tuscaloosa | | | |
| VAMC Bay Pines | | | |
| VAMC Miami | | | |
| VAMC Tampa | | | |
| VAMC Palm Beach | | | |
| VAMC Augusta | | | |
| VAMC Dublin | | | |
| VAMC Atlanta | | | |
| VAMC Balt-Downtown | | | |
| VAMC Brecc | | | |
| VAMC Perry Point | | | |
| VAMC Asheville | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Durham | | | |
| VAMC Fayetteville | | | |
| VAMC Salisbury | | | |
| VAMC Lyons | | | |
| VAMC E Orange | | | |
| VAMC Castle Point | | | |
| VAMC Manhattan | | | |
| VAMC Montrose | | | |
| VAMC Northport | | | |
| VAMC St Albans | | | |
| VAMC Bronx | | | |
| VAMC Chillicothe | | | |
| VAMC Dayton | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Altoona | | | |
| VAMC Butler | | | |
| VAMC Pittsburgh UN | | | |
| VAMC Pittsburgh ASP | | | |
| VAMC Pittsburgh HIG | | | |
| VAMC Pitts-Delafield | | | |
| VAMC Charleston | | | |
| VAMC Hot SPGS | | | |
| VAMC MTN HOME | | | |
| VAMC Houston | | | |
| VAMC Hampton | | | |
| VAMC Richmond | | | |
| VAMC Salem | | | |

| VAMC Facilities | Are meals being delivered to a building separate from where they are being prepared and assembled? (Yes/No). | Is a refrigerated vehicle used to deliver the meals to separate buildings? (Yes/No). | Name of Responsible individual with knowledge of methodology used. |
|---|---|---|---|
| VAMC Beckley | | | |
| VAMC Milwaukee | | | |

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 2 7 2001

BY_____
~ DEPUTY CLERK

| | | |
|---|---|---|
| STANDEX INTERNATIONAL CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3⇒01    0201 |
| | ) | |
| | ) | **JUDGE ECHOLS** |
| BURLODGE LIMITED | ) | |
| (owner of U.S. Pat No. 6,105,818) | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATION OF NONINFRINGEMENT

Plaintiff, for its complaint against Defendant alleges as follows:

1.       This is an action is for a declaration of noninfringement of patent under Title 35 of the United States Code.  Subject matter jurisdiction is conferred on this court by 28 U.S.C. §§ 2201 and 2202.

2.       Plaintiff, Standex International Corporation ("Standex), is a corporation organized and existing under the laws of the State of Delaware doing business in Tennessee.  One business of the plaintiff is located in Murfreesboro, Tennessee, and is a division of Plaintiff known as USECO.

3.       The Defendant is the owner of U.S. Patent No. 6,105,818.  On information and belief, the record owner of U.S. Patent No. 6,105,818 is Burlodge Limited, an entity of the United Kingdom, who is doing business in Tennessee related to the subject matter of the patent.

4.       The owner of U.S. Patent No. 6,105,818, by and through its counsel, sent a letter to USECO in Murfreesboro, Tennessee, and thereby charged Plaintiff with infringement of United States Patent No. 6,105,818 and threatened to seek treble damages and attorneys under U.S. Patent Law.

5.       Standex denies that it has infringed U.S. Patent No. 6,105,818.

\S1564CPT

WHEREFORE, Standex prays that the court declare that Standex has not infringed and is not infringing United States Patent No. 6,105,818, and grant Standex such other and further relief as the court deems just.

LUEDEKA, NEELY & GRAHAM, P.C.

By: _____

Andrew S. Neely
BPR No. 6414
Robert O. Fox
BPR No. 15185
Attorneys for Plaintiff
P. O. Box 1871
Knoxville, TN 37901-1871
(865) 546-4305

F:\56230\declaratoryjudgment.complaint.dft 2.wpd

\51564CPT

2

### NOTICE OF LAWSUIT AND REQUEST
### FOR WAIVER OF SERVICE OF SUMMONS

TO:      John F. A. Earley, III, Esq.                                    , as

(Name of individual defendant (or name of officer or agent of corporate defendant)

Attorney                                                          of

(Title, or other relationship of individual to corporate defendant, if applicable)

Burlodge Limited                                                .

(Name of corporate defendant, if any)

    A lawsuit has been commenced against you (or the entity on whose behalf you are addressed).    A copy of the complaint is attached to this notice.  It has been filed in the United States District Court for the Middle District of Tennessee and has been assigned docket number    3-01-0201                    .

    This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if I receive a signed copy of the waiver within             60 days

(Addresses must be given at least 30 days (60 days if in foreign country) in which to return waiver)

days after the date designated below as the date on which this Notice and Request is sent.  I enclose a stamped and addressed envelope (or other means of cost-free return) for your use.  An extra copy of the waiver is also attached for your records.

    If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

    If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service.  In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth on the reverse side of the waiver form.

    I affirm that this request is being sent to you on behalf of the plaintiff, this   12th   day of    March         ,  2001

Form 1A

Andrew S. Neely
Luedeka, Neely & Graham
P.O. Box 1871
Knoxville, TN 37901
(865)545-4305
(865)523-4478 (fax)

## DUTY TO AVOID UNNECESSARY COSTS
## OF SERVICE OF SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States, who, after being notified of any action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

# WAIVER OF SERVICE OF SUMMONS

TO: _____Andrew S. Neely, Esq._____

(name of plaintiff's attorney or unrepresented plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of:
_____STANDEX INTERNATIONAL CORPORATATION v. BURLODGE LIMITED_____ ,

(caption of action)

which is case number _____3-01-0201_____ in the United States

(docket number)

District Court for the Middle District of Tennessee. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____March 12, 2001_____ ,

(date request sent)

or within 90 days after that date if the request was sent outside the United States.

_____          _____
Date                              Signature

Printed/typed name:

_____John F. A. Earley, III, Esq._____

as _____Attorney_____

(Title, if applicable)

of _____Burlodge Limited_____

(Name of Corporate Defendant, if any)

Form 1B

## WAIVER OF SERVICE OF SUMMONS

**TO:** _Andrew S. Neely, Esq._

(name of plaintiff's attorney or unrepresented plaintiff)

I acknowledge receipt of your request that I waive service of a summons in the action of:
_STANDEX INTERNATIONAL CORPORATION v. BURLODGE LIMITED_ ,

(caption of action)

which is case number _3-01-0201_ in the United States

(docket number)

District Court for the Middle District of Tennessee. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _March 12, 2001_ ,

(date request sent)

or within 90 days after that date if the request was sent outside the United States.

_5-8-01_

**Date**

_John F. A. Earley Jr_

**Signature**

Printed/typed name:
_John F. A. Earley. III. Esq._

**as** _Attorney_

(Title, if applicable)

**of** _Burlodge Limited_

(Name of Corporate Defendant, if any)

Form 1B

RECEIVED

MAR - 2 2001

LUEDEKA, NEELY & GRAHAM, P.C.

**FILED**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 27 2001

BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

*Stanley International Corp*                )
                                            )
                                            )    No.  3 - 0 1  - 0 2 0 1
v.                                          )
                                            )    Judge  JUDGE ECHOLS
*Burlodge Limited*                          )    Magistrate Judge  JUDGE KNOWLES
                                            )

## NOTICE OF SETTING OF INITIAL CASE MANAGEMENT CONFERENCE

 Pursuant to Local Rule 11, effective January 1, 2001, notice is hereby given that the initial case management conference is scheduled before Judge ___JUDGE KNOWLES_____,

Courtroom _661___, U.S. Courthouse, 801 Broadway, Nashville, TN, at _10:30____, _a._ m.,

on _Monday_____, _April 23_____, 2001.

 <u>LEAD TRIAL COUNSEL FOR EACH PARTY</u> who has been served and who has received this notice is required to attend the initial case management conference unless otherwise ordered by the case management judge. Appearance by counsel at the initial case management conference will not be deemed to waive any defenses to personal jurisdiction. Counsel are advised to bring their calendars with them to the conference for the purpose of scheduling future dates. Counsel for the filing party is also advised to notify the courtroom deputy for the Judge before whom the conference is scheduled if none of the defendants has been served prior to the scheduled conference date.

 Pursuant to Local Rule 11(d), counsel for all parties shall, at the initiative of the plaintiff's counsel, confer prior to the initial case management conference as required by Fed. R. Civ. P. 26(f) to discuss the issues enumerated in Local Rule 11(d)(1)(b) and (c) and Local Rule 11(d)(2) and to determine if any issues can be resolved by agreement subject to the Court's approval. Pursuant to Local Rule 11(d)(1)b.2, counsel for all parties shall, at the initiative of plaintiff's counsel, prepare a proposed case management order that encompasses the discovery plan required by Fed. R. Civ. P. 26(f), the pertinent issues listed in section (d)(1)c and section (d)(2), and any issues that can be resolved by agreement. The proposed case management order shall be filed with the Court three (3) business days before the initial case management conference.

 Effective December 1, 2000, Fed. R. Civ. P. 26(a)(1) regarding required initial disclosures applies.

**PURSUANT TO LOCAL RULE 11(d)(1), COUNSEL FOR THE PARTY FILING THIS LAWSUIT MUST SERVE A COPY OF THIS NOTICE ON THE OTHER PARTIES TO THIS LAWSUIT ALONG WITH THE SUMMONS AND COMPLAINT <u>OR</u> WITH THE REQUEST FOR WAIVER OF SERVICE UNDER FED R. CIV. P. 4(d), <u>OR</u> WITH THE SERVICE COPY OF THE NOTICE OF REMOVAL.**

ROGER A. MILAM, CLERK
Middle District of Tennessee

cmcset.frm_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

### NOTICE

TO:        ALL COUNSEL                          DATE: *February 27, 2001*
FROM:    CLERK OF COURT

RE: _____ v. _____

Civil Case No.  **3 01  –  0 2 01** _____

This civil action is assigned to _____ **JUDGE ECHOLS** _____ and,
**JUDGE KNOWLES** _____.  Please put the District Judge's name under the
civil case number on all papers filed in this case.

Pursuant to 28 U.S.C. § 636(c), as amended, and Rule 73(b) of the Federal Rules of Civil
Procedure, this Court has designated the Magistrate Judges of this District to conduct any or all
proceedings in civil cases, upon consent of the parties. The parties may consent to have this civil action
tried on the merits before the Magistrate Judge, either as a bench trial or a jury trial. The parties may
consent to have the Magistrate Judge enter final judgment in the case or may consent to have the
Magistrate Judge decide specific matters in the case, such as dispositive motions. To exercise your right
to consent in this case, all parties must consent in writing by signing the attached form, Consent of the
Parties. Under Rule 73(b), however, no party shall inform the District Court, the Magistrate Judge or
the Clerk of any party's response, unless all parties consent. See generally Rules 72-76 of the Federal
Rules of Civil Procedure.

<u>DO NOT RETURN THE ATTACHED FORM UNLESS ALL PARTIES CONSENT TO
PROCEED BEFORE THE MAGISTRATE JUDGE.</u>

If all parties agree to the assignment of this case to the Magistrate Judge, an appeal, if any, shall
be taken directly to the U. S. Court of Appeals as provided in 28 U.S.C. § 636(c)(3) and Rule 73(c).
Further review may be taken to the U. S. Supreme Court by writ of certiorari.

Some of the advantages of consenting to proceed before the Magistrate Judge are: (1) that it results
in early and firm trial dates; (2) that it avoids any duplication in de novo review by the District Judge of
the Orders or Reports and Recommendations of the Magistrate Judge who is assigned to the case; and (3)
that it alleviates the increasing demands of criminal cases on the District Judges.

The Court normally allows and encourages the parties to consent at any time during the pretrial
proceedings, including immediately preceding the scheduled trial.

<u>THE PLAINTIFF(S) MUST SERVE A COPY OF THIS NOTICE ON THE DEFENDANT(S)
WHEN THE COMPLAINT IS SERVED.</u>

casentc.frm (3/97)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
_____ DIVISION

| | |
|---|---|
| _____<br>Plaintiff<br><br>v.<br><br>_____<br>Defendant | )<br>) No. _____<br>)<br>) District Judge _____<br>)<br>) Magistrate Judge _____ |

## CONSENT OF THE PARTIES

Pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and Local Rule 301 of the Local Rules for Magistrate Proceedings,

(  )   All parties consent to have a United States Magistrate Judge conduct any and all further proceedings including the entry of judgment in this civil action OR all parties authorize the Magistrate Judge to decide the following matters:

_____

_____

**Any appeal shall be to the U. S. Court of Appeals as provided in 28 U.S.C. § 636(c)(3) and Rule 73(c).**

<u>SIGNATURES OF ALL COUNSEL OF RECORD AND ANY UNREPRESENTED PARTY ARE REQUIRED</u>.

_____          _____
Attorney for Plaintiff/Plaintiff                    Attorney for Defendant/Defendant

_____          _____
Attorney for Plaintiff/Plaintiff                    Attorney for Defendant/Defendant

_____          _____
Attorney for Plaintiff/Plaintiff                    Attorney for Defendant/Defendant

If necessary, attach an additional page with additional signatures of counsel or parties.

<u>DO NOT FILE THIS FORM UNLESS ALL PARTIES CONSENT TO PROCEED BEFORE THE MAGISTRATE JUDGE.</u>

consent.frm (3/97)

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

**FILED**

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

STANDEX INTERNATIONAL CORPORATION     )
                                                                                )       MAY 0 8 2001
                          Plaintiff,                               )
                                                                                )       BY_____
                          Counterclaim Defendant       )              DEPUTY CLERK
                                                                                )
               v.                                                         )       Civil Action No. 3-01-0201
                                                                                )
BURLODGE LIMITED                                     )       Judge Echols
(owner of U.S. Pat. No. 6,105,818)                )
                                                                                )
                          Defendant,                            )
                                                                                )
                          Counterclaim Plaintiff.            )

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant, Burlodge Limited, by and through its undersigned counsel, responds

to the Complaint for Declaration of Non-Infringement as follows:

1.      Admitted that this purports to be an action for a declaration of non-

infringement of patent under Title 35 of the United States Code, and that Standex invokes

subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202.

2.      Defendant is without sufficient knowledge or information as to admit or

deny this allegation.

3.      Admitted.

4.      Admitted that the owner of US Patent 6,105,818, by and through its

counsel, sent a letter to USECO in Murfreesboro, Tennessee, and charged Plaintiff with

infringement of US Patent 6,105,818.  As to other allegations, the letter speaks for itself.

5.    Admitted that Standex International Corporation ("Standex") denies that it has infringed US Patent 6,105,818.

### FIRST AFFIRMATIVE DEFENSE

Standex's claim fails to state a claim upon which relief can be granted.

### DEFENDANT'S COUNTERCLAIM FOR INFRINGEMENT OF US PATENT 6,105,818

6.    The allegations of paragraphs 1-5 are repeated and incorporated herein by reference.

### NATURE OF THE ACTION

7.    This is a civil action for patent infringement under the patent laws of the United States including 35 U.S.C. sections 271, 281, 283, 284 and 285.

### JURISDICTION

8.    Subject matter jurisdiction over this action is proper in this Court under 28 U.S.C. section 1331 and 1338(a).

### VENUE

9.    Venue is proper in this district under 28 U.S.C. sections 1391 and 1400(b).

### THE PARTIES

10.    Burlodge Limited is a foreign corporation headquartered in the United Kingdom.

11.    On information and belief, Standex International Corporation ("Standex") is a corporation organized and existing under the laws of the State of Delaware doing business in Tennessee, and one business of Plaintiff is located in Murfreesboro, Tennessee, and is a division of Standex known as USECO.

## COUNT I - PATENT INFRINGEMENT

12.    The allegations of paragraphs 1-11 are repeated and incorporated herein by reference.

13.    Burlodge Limited is, and has been from the time of issuance of US Patent 6,105,818, the owner of said US Patent 6,105,818 which is, and at all times has been, valid and enforceable.  A true and correct copy of Burlodge Limited's US Patent 6,105,818 is attached hereto as Exhibit 1.

14.    US Patent 6,105,818 is for a "Food Dispensing Cycle and Means" and contains a single method claim.

15.    On information and belief, Standex has infringed Burlodge Limited's US Patent 6,105,818.

16.    On information and belief, Standex's infringement has been willful and deliberate.


WHEREFORE, Burlodge prays:

a.    For an injunction prohibiting Standex and its agents, employees and those acting in concert with them, from infringing Burlodge's Patent in any manner;

b.    For an order directing that all materials which are in the possession, custody, or control of Standex which are alleged to infringe Burlodge's Patent be delivered to the Court for impoundment during the pendency of this action;

c.    For an award of damages in an amount sufficient to compensate Burlodge for the acts of patent infringement committed by Standex;

d.     For an award of Standex's profits and/or Burlodge's damages resulting from Standex's patent infringement at least including a reasonable royalty;

e.     For an award of treble damages due to the intentional and willful violation of Burlodge's rights under U.S. Patent law;

f.     For an assessment of costs and award of Burlodge's reasonable attorney's fees in prosecuting this action against Standex; and

g.     For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Edward D. Lanquist, Jr., Esq.
Emily A. Shouse, Esq.
Waddey & Patterson
Bank of America Plaza
414 Union Street
Suite 2020
Nashville, TN 37219
(615) 242-2400

Attorneys for Defendant


Of Counsel:

John F.A. Earley III, Esquire
Frank J. Bonini, Jr., Esquire
HARDING, EARLEY, FOLLMER & FRAILEY
86 The Commons at Valley Forge E.
1288 Valley Forge Road
P.O. Box 750
Valley Forge, PA 19482
(610) 935-2300

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Answer was sent to the address below via first class mail, postage prepaid, on May 8, 2001.

Andrew S. Neely
Luedeka, Neely & Graham
P.O. Box 1871
Knoxville, TN  37901

Edward D. Lanquist, Jr.



US00RE39551E

(19) **United States**

(12) **Reissued Patent**
Speranza

(10) Patent Number: **US RE39,551 E**

(45) Date of Reissued Patent: **Apr. 10, 2007**

(54) **FOOD DISPENSING CYCLE AND MEANS**

(75) Inventor: **Angelo Speranza**, Surbiton Surrey (GB)

(73) Assignee: **Burlodge Limited**, Surrey (GB)

(21) Appl. No.: **09/928,546**

(22) PCT Filed: **May 8, 1996**

(86) PCT No.: **PCT/GB96/01097**

§ 371 (c)(1),
(2), (4) Date: **Feb. 19, 1997**

(87) PCT Pub. No.: **WO96/35362**

PCT Pub. Date: **Nov. 14, 1996**

**Related U.S. Patent Documents**

Reissue of:
(64) Patent No.: **6,105,818**
     Issued: **Aug. 22, 2000**
     Appl. No.: **08/776,097**
     Filed: **Feb. 19, 1997**

(30) **Foreign Application Priority Data**

May 9, 1995    (GB) ............................................. 9509375

(51) **Int. Cl.**
*A47J 39/00*          (2006.01)

(52) **U.S. Cl.** ........................ 221/1; 221/150 R; 312/236; 165/918; 219/386

(58) **Field of Classification Search** .................... 221/1, 221/150 R, 150 HC; 312/236, 249.8, 249.11; 219/385, 386, 387; 165/918
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,261,650 A | * | 7/1966 | Stromquist | 312/236 |
| 3,275,393 A | * | 9/1966 | Stentz et al. | 312/214 |
| 3,517,899 A | * | 6/1970 | Vernon | 244/118.5 X |
| 3,608,770 A | * | 9/1971 | Naimoli | 426/114 X |
| 3,719,408 A | | 3/1973 | Fullington et al. | 312/236 |
| 3,752,550 A | | 8/1973 | Niemeyer | 312/237 |
| 3,759,661 A | | 9/1973 | Barsby | 432/241 |
| 3,834,865 A | | 9/1974 | Lee | 312/236 |
| 4,005,745 A | * | 2/1977 | Colato et al. | 312/236 |
| 4,103,736 A | * | 8/1978 | Colato et al. | 312/236 |
| 4,156,456 A | * | 5/1979 | Müller | 165/48 R |
| 4,203,486 A | * | 5/1980 | Rubbright et al. | 165/48 R |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 43 23 189 A1 | 11/1994 |
| FR | 2 508 303 | 12/1982 |
| GB | 1 257 896 | 12/1971 |
| GB | 2 209 206 A | 5/1989 |

*Primary Examiner*—Eileen D. Lillis

(74) *Attorney, Agent, or Firm*—Davis & Bujold, P.L.L.C.

(57) **ABSTRACT**

A method of dispensing food whereby food prepared at a first location is transported to a second location for dispensing in a working cycle characterized by the steps of apportioning the food onto a plurality of trays (20A, 20B) at the first location, loading the plurality of trays (20A, 20B) into a rack (15) to give, in combination, a spaced array of loaded trays; the spaced array having predetermined overall dimensions; transporting the spaced array to an intermediate location, placing the loaded rack into a containment (11) with an internal volume (12) of sufficient size to receive at least one spaced array; transporting the containment along with its spaced array or arrays to the second location; regenerating food in the spaced array while within the containment; dispensing loaded trays (20A, 20B) from the spaced array; and returning the racks (15) back to the first or some other location for re-use. Apparatus for dispensing food comprising a containment (11) adapted to receive at least, one removable rack (15), the rack being adapted to contain at least two removable trays (20A, 20B) for food for regeneration.

**20 Claims, 2 Drawing Sheets**



**US RE39,551 E**

Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,254,824 A | * | 3/1981 | Springer | 312/236 |
| 4,285,391 A | * | 8/1981 | Bourner | 165/30 |
| 4,323,110 A | * | 4/1982 | Rubbright et al. | 165/2 |
| 4,384,191 A | * | 5/1983 | Guibert | 219/385 X |
| 4,397,159 A | | 8/1983 | Dodd | 312/236 |
| 4,544,024 A | | 10/1985 | Baggott | 165/48 |
| 5,069,273 A | | 12/1991 | O'Hearne | 312/236 |
| 5,086,834 A | | 2/1992 | Grandi | 165/135 |
| 5,159,973 A | * | 11/1992 | Pennington et al. | 312/236 X |
| 5,182,438 A | | 1/1993 | Oakes et al. | 219/386 |
| 5,221,023 A | | 6/1993 | Dubik | 221/1 |
| 5,240,320 A | * | 8/1993 | Yerman | 312/236 X |
| 5,285,051 A | | 2/1994 | DeGrow et al. | 219/386 |
| 5,393,960 A | | 2/1995 | Beizermann | 219/729 |
| 5,403,997 A | | 4/1995 | Wimpee et al. | 219/386 |
| 5,404,935 A | | 4/1995 | Liebermann | 312/236 |

* cited by examiner



FIG.1

FIG.2

(AMENDED)



FIG.3 (AMENDED)

US RE39,551 E

1

# FOOD DISPENSING CYCLE AND MEANS

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

## TECHNICAL FIELD

This invention relates to a food dispensing cycle and means for undertaking it.

## BACKGROUND ART

The dispensing of food in large organisations frequently involves the preparation of food at a first location followed by its being moved and then dispensed at a second location. At the first location the food is prepared and then divided into individual portions on a utensil, such as a plate or bowl, which will be presented to an individual consumer at the second location. Given the prepared utensil is loaded with food at the first location there arise the need to ensure that the food is kept at a storage temperature where deterioration will be minimised or eliminated until a regeneration step is undertaken to ensure that the consumer receives the food on its utensil without having been contaminated in some way, in a good and visually attractive condition and at the correct temperature. To meet this requirement it is commonly the practice to make use of mobile trolleys at the second location into which trays of prepared food from the first location are placed and a regenerative cycle is then undertaken either by way of heating/cooling means in the trolley or to which the trolley can be linked.

GB Patent 1527 119 shows a mobile container having an insulated outer case which is insulated and divided into compartments each containing a set of tray supports in the form of upper and lower flanges each side and at the back. Each tray has locations for holding in the supports and several apertures along the sides. These hold bowls provided with covers for the hot food. Underneath each row of apertures is a heating element on which the bowls sit raised above the tray surface but retained by raised portions on tray and bowls. The compartment is otherwise refrigerated the remainder of the tray area being taken up by cold food. This arrangement requires special trays and heaters and does not readily lend itself to food regeneration processes. It also does not provide readily for a change in the area of the tray subject to heating as distinct from cooling or for maintenance at a temperature approximating to ambient temperature in the region of the trolley.

## DISCLOSURE OF INVENTION

According to a first aspect of the present invention there is provided a method of dispensing food whereby wherein food prepared at a first location is transported to a second location for dispensing in a working cycle characterised by

1 apportioning the food onto a plurality of trays at the first location;

2 loading the plurality of trays into a rack to give, in combination, a spaced array of loaded trays the spaced array having predetermined overall dimensions;

3 transporting the spaced array to an intermediate location;

4 placing the spaced array into a containment with an internal volume of sufficient size to receive at least one spaced array;

5 transferring the containment along with its spaced array or arrays to the second location:

2

6 regenerating food in the spaced array while within the containment,

7 dispensing food from trays in the spaced array;

8 returning the racks back to the first, or some other, location for re-use.

According to a first preferred version of the first aspect of the present invention the step of regenerating food is undertaken by way of heating and/or cooling means located in the containment.

According to a second preferred version of the first aspect of the present invention the step of regenerating food is undertaken by way of heating and/or cooling means demountably coupled to the containment.

According to a third preferred version of the first aspect of the present invention or any preceding preferred version thereof the containment is mobile.

According to a second aspect of the present invention there is provided apparatus for dispensing food comprising a containment adapted to receive at least one removable rack, the rack being adapted to contain at least two removable tray for food for regeneration.

## BRIEF DESCRIPTION OF DRAWINGS

An exemplary embodiment of the invention will now be described with reference to the accompanying drawings which show a method of dispensing food and equipment therefore of which:

FIG. 1 is a perspective view of a trolley,

FIG. 2 is a perspective view of a rack and trays for incorporation in the trolley of FIG. 1; and

FIG. 3 is a block diagram showing the steps involved in the method.

## MODES FOR CARRYING OUT THE INVENTION

FIG. 1 shows a mobile trolley 11 for food regeneration which has an interior volume 12 having dimensions: length L, height H and depth D. The interior volume 12 is accessed through aperture 13 can be closed by doors 14A, 14B. The interior volume 12 is substantially free of any obstructions and is of a size and shape to accommodate two racks described in connection with FIG. 2. The trolley is equipped with castors W to enable it to be readily moved.

FIG. 2 shows a rack 15 is made up of corner posts 16 to 19 linked by pairs of horizontally opposed rail pairs A, A' to F, F'. Mid posts M1, M2 serve to divide the interior parts of the rack into two vertical halves and to support the inner. Each pair of rails serves to accommodate a pair of trays. Typically rails C, C' support trays 20A, 20B. The rail pairs A, A' to F, F' are spaced so as to provide clearance above each tray enabling each tray to hold food for an eventual consumer. The rack 15 is of sufficient strength and rigidity to support without distortion a full complement of tray pairs each tray being loaded with foodstuff so that the rack and trays (along with their contents) constitute a racked array. The outside dimensions of the array: width X, height Y and depth Z are slightly smaller than the interior dimensions L, H, D of the trolley so that two loaded racks are a snug fit within the interior volume 12 of the trolley 11 so that the rack 15 is prevented from excessive movement relative to the trolley 11.

The trolley 11 has an end section 21 which contains an electrically powered heater and fan to enable air at a predetermined temperature to circulated within the interior volume 12, or a part thereof as defined by baffles within the

US RE39,551 E

3

trolley or located on each tray. This enables food on each tray, or a particular part of each tray, to be warmed in accordance with a predetermined program established by way of a control panel 22. The trolley 11 also has an end section 23 which contains a refrigerating unit and fan to provide for air to be cooled and circulated over a region of each tray where food is to be maintained cool. The trolley 11 can be plugged into a power supply by way of lead 24 to enable the heating and cooling systems to be operated.

The method of operation of the food dispensing system will now be considered with particular reference to FIG. 3.

Supply location 30 represents a food preparation area (*the first location*) for supplying a number of consumer sites (*the second location*) 31, 32, 33 which are in this case hospitals which are some distance from each other and from supply location 30. The supply location 30 receives raw materials and supplies by path [W] *RM*. At the supply location 30 food is prepared, cooled and plated and individual amounts for an individual consumer at one of the consumer sites are placed on a tray. Trays for delivery to a particular consumer location 31 are placed on one or more racks 15 as described in relation to FIG. 1. The racked arrays are then loaded into a refrigerated transfer vehicle 35 whereby the food is transferred to location 31. The *transfer* vehicle 35 is equipped with a load space incorporating suitable cooling means to ensure that trays of food in each rack does not exceed predetermined limits.

The transfer vehicle 35 then delivers along path S the racked arrays bearing the food to consumer site 31. At an intermediate location 34 at the site each racked array is unloaded from the *transfer* vehicle 35 and loaded into a regeneration trolley[s] 11 of the type described in connection with FIG. 1. The loaded trolley 11 is then moved closer to the location of the eventual consumers of the contents of the trolley 11. The trolley 11 is connected to a power supply and is then powered up to enable the food content of the racked array to be automatically regenerated according to a predetermined program held in the control unit of the trolley 11. Once regeneration has been completed the trolley 11 is opened and the trays and their contents distributed to the recipients.

Once consumption of the food has been completed the trays are returned to the racks 15 in the trolley 11. The trolley 11 is then transferred to the intermediate location 34 at the consumer site where the racks 15 loaded with the now used trays are transferred from the trolley 11 into a *transfer* vehicle 35 which returns the used trays and utensils to the supply location 30 for cleaning and reloading.

If necessary a vehicle can deliver racks bearing food for consumption over a period of time. In such a case given that sufficient regeneration trolleys are available then the trolleys can all be loaded and programmed to ensure that regeneration occurs at appropriate times. Alternatively if sufficient trolleys are not available then the loaded racks can be kept in some form of chilled storage.

Satellite sites 32, 33 are supplied in a similar way to that described for site 31.

It will be apparent that the method of the embodiment enables equipment to be utilised efficiently and to reduce the need for expensive regeneration trolleys to be transported outside the site where they are used. Each site thus retains control of its own regeneration trolleys. The only items needing to be transported between supply site 30 and the consumer sites 31, 32, 33 are the racks bearing the trays and two or three racks are substantially cheaper than a regeneration trolley. A single regeneration trolley can be used for

4

a given location, say a word, to provide meals for, say three, eating periods in a day. The trolley is initially charged with racks bearing loaded trays and a regeneration cycle completed prior to food being distributed for the first meal. This cycle can readily be repeated for two further meal periods since all that is required is the removal of racks with emptied trays, cleaning and recharging with a fresh set of racks with food bearing trays. Cleaning is readily undertaken since the interior of a trolley utilising the racks of the present invention contain little apart from the wall, and top and bottom surfaces.

A supply site 30, possibly many miles from one or more consumer sites, can be equipped, staffed and operated to take advantage of economies of scale and so supply consumer sites more efficiently than would be possible where each consumer site has its own food preparation and distribution system. In addition the transportation of more racks than regeneration trolleys can beundertaken in a given vehicle. At the supply site the cleaning and storage of racks and the loading of racks with charged trays involves smaller storage and handling areas at the supply site than would be possible where charged trays have to be loaded into regeneration trolleys recovered from the or each consumer site.

What is claimed is:

1. A method of preparing, transporting and dispensing food between a series of remote locations, the method comprising the steps of:

preparing the food for consumption at a first location;

apportioning the food onto a plurality of trays at the first location;

stacking the trays in a manually maneuverable rack, and providing the rack with a predetermined stacking arrangement of particular dimensions;

loading the maneuverable rack onto a refrigerated vehicle for transportation to a second remote location;

transferring the maneuverable rack, at the second location, into a moveable receptacle comprising at least one of heating and cooling means, and the receptacle being configured to receive at least one of the plurality of racks;

relocating the moveable receptacle to a desired position;

activating at least one of the heating and cooling means prior to dispensing of the food trays to consumers;

dispensing the food trays to the consumers for consumption;

collecting and re-stacking the trays in the rack situated within the receptacle;

removing the at least one maneuverable rack [form] *from* the moveable receptacle for transportation of the rack back to the first location.

2. *A method of preparing and transporting food for rethermalization comprising the steps of:*

*at a first location:*

*preparing food;*

*apportioning the prepared food onto a plurality of trays;*

*loading the plurality of trays, bearing the apportioned food, onto a manually maneuverable rack for receiving and supporting the plurality of trays in a predetermined alignment;*

*providing a refrigerated transfer vehicle for transporting the rack, loaded with the plurality of trays bearing the apportioned food, from the first location to a second location spaced from the first location;*

*loading the rack, stacked with the plurality of trays, onto a refrigerated transfer vehicle for transportation to a second location;*

US RE39,551 E

<table>
<tr><td>5</td><td>6</td></tr>
</table>

transporting the rack, containing the plurality of trays bearing the apportioned food, in the transfer vehicle to the second location;

at the second location:

transferring the rack from the transfer vehicle to a moveable receptacle at the second location; and

rethermalizing the apportioned food while the plurality of trays are supported by the rack at the second location.

3. The method as claimed in claim 2, further comprising the step of, following sufficient regeneration of the apportioned food at the second location, distributing the plurality of trays bearing the apportioned food to a consumer for consumption.

4. The method as claimed in claim 3, further comprising the step of utilizing the rack to recover the plurality of trays from the consumer, following consumption of a desired portion of the apportioned food by the consumer.

5. The method as claimed in claim 4, further comprising the step of, following recovery of the plurality of trays from the consumer, transporting the recovered plurality one of trays back to the first location via use of the rack.

6. The method as claimed in claim 2, further comprising the step of using the moveable receptacle to dispense the plurality of trays, containing the apportioned food, to consumers for consumption with the rack contained within the moveable receptacle during dispensing of the plurality of trays.

7. The method as claimed in claim 6, further comprising the step of, following consumption of the apportioned food by the consumers, collecting the plurality of trays with the rack located within the movable receptacle.

8. The method as claimed in claim 7, further comprising the steps of:

removing the rack from the movable receptacle following collection of the plurality of trays; and

returning the plurality of trays and the rack back to the first location for reuse while leaving the receptacle at the second location.

9. The method as claimed in claim 2, further comprising the step of using a mobile trolley incorporating heating/cooling means as the receptacle to facilitate rethermalization of the apportioned food on the plurality of trays.

10. The method as claimed in claim 2, further comprising the step of using one of:

a mobile trolley incorporating heating/cooling means as the receptacle;

the mobile trolley coupled in operable combination with a separate heating cooling means; and

the heating cooling means to facilitate rethermalization of the apportioned food on the plurality of trays.

11. The method as claimed in claim 2, further comprising the step of loading the plurality of trays, each bearing apportioned food, onto the rack prior to transporting the rack, loaded with the plurality of trays bearing the apportioned food, to the second location by way of a transport vehicle.

12. The method as claimed in claim 2, further comprising the step of placing the transported rack, loaded with the plurality of trays bearing the apportioned food, in storage prior to rethermalizing the apportioned food of the plurality of trays.

13. A method of preparing and transporting food for rethermalization comprising the steps of:

apportioning food onto a plurality of trays;

at a first location:

loading the plurality of trays bearing the apportioned food onto a manually maneuverable rack for receiving and supporting the plurality of trays;

loading the rack, containing the plurality of trays, onto a refrigerated transport vehicle for transportation to a remote location from the first location;

transporting the rack, containing the plurality of trays bearing the apportioned food, in the transport vehicle to the remote location;

at the remote location;

after the rack has been transported to the remote location in the transport vehicle, transferring the rack from the transfer vehicle to a moveable receptacle;

the receptacle being configured to receive at least one rack; and

activating at least one of a heating system and a cooling system to regenerate the apportioned food on the plurality of trays on the rack that is positioned in the receptacle.

14. The method of claim 13, the rack, having a predetermined stacking arrangement of particular dimensions.

15. The method as claimed in claim 13, the heating system and the cooling system being either located in the receptacle or being demountably coupled to the receptacle.

16. The method as claimed in claim 13, further comprising the step of:

dispensing the plurality of trays bearing the apportioned food to a consumer for consumption of the food.

17. The method as claimed in claim 16, further comprising the step of:

collecting the plurality of trays after the plurality of trays have been dispensed to a consumer for consumption of the food.

18. The method as claimed in claim 17, further comprising the step of:

returning the plurality of trays and the rack to the first location.

19. The method of claim 13, the manually maneuverable rack lacking any heating and cooling means and the moveable receptacle having a heating means and a cooling means.

20. The method of claim 13, further including the step of relocating the moveable receptacle to a desired location after the rack has been transferred from the transfer vehicle to the moveable receptacle.

\* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

STANDEX INTERNATIONAL          )
CORPORATION,                   )
                               )
        Plaintiff,             )
                               )
vs.                            ) Civil Action No.
                               ) 3-01-0201
BURLODGE LIMITED,              ) Judge Robert L.
                               ) Echols
        Defendant.             ) Magistrate Judge
                               ) E. Clifton Knowles

DEPOSITION OF:

THOMAS K. TAYLOR

Taken on behalf of the Plaintiff

February 12, 2008

VOWELL & JENNINGS, INC.
Court Reporting Services
207 Washington Square
214 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

---

1    APPEARANCES:
2    For the Plaintiff:
3    FRANK J. BONINI, JR.
     Harding, Earley, Follmer & Frailey
4    86 The Commons at Valley Forge East
     1288 Valley Forge Road
5    P.O. Box 750
     Valley Forge, Pennsylvania, 19482-0750
6    610.935.2300
     fbonini@hardingearley.com
7
8
     For the Defendant:
9
     GEOFFREY D. KRESSIN
10   Luedeka, Neely & Graham, P.C.
     900 S. Gay Street, Suite 1871
11   Knoxville, Tennessee, 37902-1864
     865.546.4305
12   gkressin@LNG-patent.com
13
14   PAUL W. AMBROSIUS
     Trauger & Tuke
15   The Southern Turf Building
     222 4th Avenue North
16   Nashville, Tennessee, 37219-2117
     615.256.8585
17   pambrosius@TNTLaw.net
18
19
20
21                                    \
22
23   ORIGINAL
24
25

---

1              I N D E X
2    WITNESS:  THOMAS K. TAYLOR
3          INDEX OF EXAMINATIONS
4
5                                  Page/Line
     Confidential Material        29    01
6    through                      31    25
7    Examination by Mr. Boniglio  05    03
     Errata Sheet                 201   01
8
9
10         INDEX OF EXHIBITS
11   No. T-1                      15    19
     No. T-2                      22    06
12   No. T-3                      48    13
     No. T-4                      59    01
13   No. T-5                      68    20
     No. T-6                      79    22
14   No. T-7                      85    04
     No. T-8                      94    06
15   No. T-9                      120   06
     No. T-10                     125   04
16   No. T-11                     131   06
     No. T-12                     137   23
17   No. T-13                     141   13
     No. T-14                     145   10
18   No. T-15                     146   24
     No. T-16                     150   18
19   No. T-17                     156   20
     No. T-18                     162   06
20   No. T-19                     164   10
     No. T-20                     169   15
21   No. T-21                     169   15
     No. T-22                     172   20
     No. T-23                     191   12
23
24
25

---

1         The deposition of THOMAS K. TAYLOR, taken
2    on behalf of the Plaintiff, on the 12th day of
3    February, 2008, in the offices of Waddey &
4    Patterson, 1600 Division Street, Suite 500,
5    Nashville, Tennessee, 37219, for all purposes
6    under the Federal Rules of Civil Procedure.
7         The formalities as to notice, caption,
8    certificate, et cetera, are waived.  All
9    objections, except as to the form of the
10   questions, are reserved to the hearing.
11        It is agreed that Deborah J. Harris, being
12   a Notary Public and Court Reporter for the
13   State of Tennessee, may swear the witness, and
14   that the reading and signing of the completed
15   deposition by the witness are reserved.
16
17
18
19              *  *  *
20
21
22
23
24
25

1  of the -- what would be another salesperson
2  contact after the system was set up?  Why would
3  the customer call the salesperson again?
4      A    It would depend on the contract that
5  we entered into with them.  And that was
6  usually driven by their specifics in the RFP
7  for the software.
8      But it wouldn't be unusual for us to go
9  back 90 days after they had implemented the
10 system to take a snapshot of where they were,
11 make some changes people-wise, plating-wise,
12 production-wise, and leave again, come back in
13 six months, come back at the end of the year.
14     Q    Is it fair to say that USECO would
15 know what its customers were doing with the
16 equipment?
17     A    Absolutely.
18     Q    Okay.  And did the customer contact
19 the salesperson to purchase, say, additional
20 trays or replacement parts or would they
21 contact someone else?
22     A    That would probably go through
23 customer service.
24     Q    Did the sales -- to your best
25 recollection and knowledge, did the sale of a

1  Unitron 7 ever result in the sale of another
2  Unitron -- sorry, another USECO product?
3      A    We tried to make that happen every
4  instance we made a sale.
5      Q    What were some of the other products
6  that a customer might be able to use?
7      A    Blast chiller, top of the list.  Cold
8  tray lines, second.  Carts of various types.
9  Dollies.  The list is endless.
10     Q    Now, is this a result of switching
11 over from a hot meal system, the fact that you
12 could -- it would then open the market up to
13 sell these other --
14     A    The blast chiller would not be
15 necessary when they were still doing hot
16 plating.  A cold tray line would not be
17 necessary if they were doing hot plating.  So,
18 yes.  The answer to your question is yes.
19     Q    Was there an Alani Hospital?
20     A    I think there may have been, but I
21 don't know whether we were awarded that job or
22 not without looking at the list.
23     Q    Were you involved in that -- in any
24 activity to sell a system to Alani Hospital?
25     A    I can't remember.

1      Q    Okay.  Do you know Pam Oldham?
2      A    Oldham?
3      Q    Yes.
4      A    No.
5      Q    Jody Locker?
6      A    No.
7      Q    Did any of the Veteran's Hospitals
8  purchase Unitron 7's?
9      A    Atlanta.
10     Q    Atlanta VA.  And was that multiple
11 locations?
12     A    I can't recollect.  I don't think so.
13     Q    Who was responsible or who was the
14 salesperson responsible for that sale?
15     A    That may have been Sarah Hurt.  It
16 was going to either be Sarah Hurt or Mari
17 Herdine.
18     Q    Mr. Taylor, looking at replacement
19 parts would typically be the most common after
20 the sale of the Unitron 7?
21     A    It would really be a function of
22 which system was sold.
23     Q    Did the Unitron 7 have different
24 configurations?
25     A    It was significantly different.  The

1  Unitron 5 had no relationship to the Unitron 3.
2      Q    Did the Unitron 7 have different
3  configurations that a customer could purchase
4  as options?
5      A    Only in terms of number of tray sizes
6  or the number of trays that could go into a
7  cart.
8      Q    Anything else that it would have?
9      A    No.  Well, I take that back.  It
10 could have a tow hitch.
11     Q    The system, I have seen that before;
12 what do you consider the Unitron 7 system?
13     A    Sorry, I don't understand.
14     Q    What do you consider if I purchase --
15     MR. KRESSIN:  Do you mean parts to
16 make --
17 BY MR. BONINI:
18     Q    The parts that make up the Unitron 7
19 system, what would I have to purchase?
20     A    You would have to purchase a
21 compressor and a condensing unit and some
22 heating elements and all of the componentry to
23 drive that from an electrical standpoint.
24 Castors.
25     Q    And that would be it?



**Department of Veterans Affairs**
**Office of Regional Counsel**
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

April 15, 2008

<u>BY FACSIMILE ONLY</u>
(610) 935-0600

Charles L. Riddle, Esq.
Harding, Earley, Follmer & Frailey, P.C.
86 The Commons At Valley Forge East
1288 Valley Forge Road
Post Office Box 750
Valley Forge, Pennsylvania 19482-0750

Re: <u>Standex Int'l Corp. v. Burlodge Ltd.</u>, USDC M.D. Tenn.
Case No. 3:01-00201 Subpoena to United States Department of
Veterans Affairs

Dear Mr. Riddle:

I am writing in response to your April 4, 2008, letter to
Ellen Hastings of this office relating to the subpoena
*duces tecum* that you had served on the VA Medical Center in
Atlanta, Georgia (VAMC-Atlanta). The Department of Veterans
Affairs (VA) declines to participate in this matter as
fully set out below.

This is a patent infringement action between private
parties in which your client alleges that Standex
International Corporation has "contributed to the
infringement, or induced the infringement of Burlodge's
reissue patent by selling equipment and providing the know-
how to use this equipment" to the VA (quoting your March
13, 2008, letter to me). In essence, therefore, your
client alleges infringement of the reissue patent by the
VA, a third party to the lawsuit at this time. Your
subpoena to the VA seeks testimony in the manner of a Rule
30(b)(6) deposition on five topics going back eight years,
as well as seeking production of nine broad categories of
documents and an inspection of premises. By your April 4,
2008, letter to Ms. Hastings, you have supplemented the
requested discovery to require information relating to any
alleged infringement of the reissue patent at forty-one
(41) additional VA Medical Centers around the country.

After reviewing the subpoena, the above referenced correspondence, I consulted with VA counsel in Veterans Affairs Central Office (VACO), in Washington, D.C., and reviewed the Department's *Touhy* Regulations, found at 38 C.F.R. 14.800 to 14.810, and consulted with the Department of Justice, before reaching my conclusion. Based upon my review and consultations, I have concluded not to authorize the disclosure of VA records or the testimony of VA personnel in response to your demand.

In making this decision, I have considered the factors delineated in 38 C.F.R. § 14.804, as I am required to do. Subsections 14.804(a), (b), (d), (h), (l) and (o) each militate against disclosure. Permitting this discovery would be detrimental to the VA in that the VA would be required to "spend[] the time and money of the United States for private purposes," which would reduce "the time of VA personnel [needed] for conducting their official duties concerning servicing the Nation's veteran population." Id. § 14.804(a). The "testimony or production of records" also would not "assist VA in performing its statutory duties." Id. § 14.804(b). Further, the demand is unduly burdensome in its scope, seeking documents over an eight year period, Rule 30(b)(6) type deposition testimony, a physical inspection of VAMC-Atlanta, and an analysis of the methodology utilized at more than forty VA Medical Centers to prepare and deliver food to patients. Id. § 14.804(d). For the reasons outlined above, the testimony also would be inappropriate under the circumstances in light of your reference to alleged patent infringement by the VA, Id. §§ 14.804(h), (o), under which it reasonably could be considered simply a fishing expedition for pre-filing discovery against the VA in a contemplated infringement action. Finally, the requested discovery is not related to furthering the VA's mission of servicing the Nation's veterans. Id. § 14.804(l).

Sincerely,

W.M. Thigpen
Regional Counsel

cc:  Paula Marti, FOIA Officer
     Helen Brown, RD




# Department of Veterans Affairs
## Office of Regional Counsel
1700 Clairmont Rd.
Decatur, GA 30033-4032

(404) 929-5851
FAX (404) 929-5870

# FaxCoverSheet

| | | | |
|---|---|---|---|
| **To:** | Charles Riddle | **From:** | Ellen M. Hastings |
| **Fax:** | 610~935~0600 | **Pages:** | 3 |
| **Phone:** | | **Date:** | 4-15-08 |
| | | **Time:** | |
| **Re:** | Standex v. Burlodge Limited | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   x **Please Reply**   ☐ **Please Recycle**

● **Comments:**   Mr. Riddle: We have attached the Regional Counsel's response. Thank you for your cooperation. Ellen

This message is intended only for the use of the person or office to who is addressed and may contain information that is privileged, confidential or protected by law, All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone at the above telephone number, and return the original message to us at the above address via the United States Postal Service. Thank you.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

IN RE: MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA
DIRECTED TO DEPARTMENT OF
VETERANS AFFAIRS

Case No._____

Underlying case pending in Middle District of
Tennessee:

STANDEX INTERNATIONAL CORP.

       Plaintiff/Counter-Defendant

v.

BURLODGE LIMITED,

       Defendant/Counter-Plaintiff.

**ORDER GRANTING MOTION OF BURLODGE LIMITED TO COMPEL THE**
**DEPARMENT OF VETERANS AFFAIRS TO COMPLY WITH SUBPOENA**

Upon consideration of the Motion For Burlodge Limited For An Order Compelling The

Department Of Veterans Affairs To Comply With Subpoena, and for good cause shown, it is

hereby ORDERED that said motion is GRANTED, and that the Department of Veterans Affairs

shall comply with the subpoena by no later than _____.

It is so ORDERED this _____ day of _____, 2008.


_____
United States District Judge