# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: Motion to Compel Compliance )<br>with Subpoena Direct to Department )<br>of Veterans Affairs )<br> )<br>**BURLODGE LIMITED,** )<br> )<br>*Petitioner*, )<br> )<br>v. )<br> )<br>**STANDEX INTERNATIONAL CORP. and** )<br>**DEPARTMENT OF VETERANS AFFAIRS,** )<br> )<br>*Respondents.* )<br> ) | **Misc. Action No. 08-525 (CKK/JMF)** |

## MEMORANDUM OPINION

Currently before the court is a Motion to Compel Compliance with a subpoena, pursuant to Rule 45 of the Federal Rules of Civil Procedure, filed by Burlodge Limited.  <u>Motion of Burlodge Limited for an Order Compelling the Department of Veterans Affairs to Comply with Subpoena</u> [#1] ("Mot. to Comp.").

## BACKGROUND

This Motion to Compel arises out of a patent infringement case, currently pending in the U.S. District Court for the Middle District of Tennessee, regarding a method of preparing and serving food using "rethermalization" or "retherm" food carts.  Both parties in the underlying case have a right to sell the retherm carts, but only Burlodge Limited ("Burlodge"), the defendant and counter-plaintiff, has the ability to grant others the right to use its patented method of preparing and serving food.  Burlodge claims that Standex International Corporation ("Standex"), the plaintiff and counter-defendant in the underlying case, has been selling retherm carts and

providing third-parties with Burlodge's patented method of preparing and serving food.  During

discovery, Burlodge found that Standex had sold retherm carts, called Unitron 7's, to the

Department of Veteran's Affairs ("DVA").

On April 4, 2008, Burlodge served a subpoena on the DVA seeking information related to

the DVA's use, and purchase of the Unitron 7, as well as the DVA's correspondence with

Standex related to the purchase and training for the use of Unitron 7's.

Specifically, Burlodge first served a notice of deposition pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure, denominating the following topics for the deposition:

1.  The meal preparation, delivery and dispensation methods
    employed by any Veteran's Affairs Medical Center
    ("VAMC") facility using Unitron 7 equipment;

2.  The purchase of each Unitron 7 product;

3.  Communications or correspondence between USECO
    (and/or Standex Corporation) and the DVA;

4.  The cost to prepare, deliver and dispense a meal; and

5.  Costs billed or recovered in connection with meal
    preparation, delivery, and dispensation services to patients
    and other companies and organizations (such as a sister
    company, for example).

Mot. to Comp. Ex. 1, at 4.  Burlodge also asks that the DVA produce the following documents:

1.  All documents related to the purchase of Unitron 7
    equipment;

2.  All requests for proposal that led to the purchase of
    Unitron 7 equipment;

3.  All proposals for rethermalization systems;

4.  The file relating to the Unitron 7 system;

5.      Documents relative to systems considered in
        addition to the Unitron 7;

6.      Documents sufficient to show the costs involved in
        preparing and dispensing a meal;

7.      Documents sufficient to establish what amounts are
        billed and/or recovered for meals prepared and/or
        dispensed with Unitron 7 equipment (or what
        amounts are recovered for receiving a meal prepared
        and dispensed by any VAMC facility utilizing
        USECO/UNITRON brand equipment);

8.      Documents which evidence (or are sufficient to
        establish) any profit made in providing meals to
        customers or consumers (or other recipients of
        meals (e.g. one entity to another entity)); and

9.      All videos showing the Unitron 7 equipment.

Mot. to Comp. Ex. 1, at 5.

The DVA decided not to comply with Burlodge's entire subpoena based upon

the DVA's so-called *Touhy* regulations,[1] which establish certain factors that the DVA considers

when deciding whether to comply with a request for production of documents or testimony in

legal proceedings where the DVA is a third party.  See 38 C.F.R. § 14.800.[2]

A.      Burlodge

First, Burlodge contends that Rule 45, and not the *Touhy* regulations, provides the

controlling standard as to whether DVA must comply with the subpoena.  Mot. to Comp. at 4-5.

Second, Burlodge contends that in order to prove its underlying claim against Standex, it

must prove (1) direct infringement of its patent by Standex customers and (2) that Standex either

---

[1] The name derives from the plaintiff in United States ex rel. Touhy v. Regan, 340 U.S. 462, 468 (1951), a case that
allowed agency heads to promulgate regulations regarding subpoenas.

[2] All references to statutes or regulations are to the most recent versions that appear on Lexis or Westlaw.

knew that its customers would infringe the patent or assisted its customers in infringing the patent. Id. at 3-4. The DVA's potential use of Burlodge's method would provide Burlodge with the "direct infringement" necessary to prove its claim. Id. Burlodge also seeks information related to communications between the DVA and Standex in order to prove that Standex assisted the DVA or had knowledge that the DVA would use Burlodge's patent. Id. The "central inquiry," according to Burlodge, is (1) whether the DVA purchased retherm carts from Standex and (2) whether Burlodge's patented method of dispensing food was used. Id. at 2. Accordingly, Burlodge contends that the information sought is "highly relevant" to its claim and within the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). Id. at 3-4.

Lastly, Burlodge contends that the Narrowing Table it has provided to the DVA to limit discovery to those VAMC facilities that potentially use its patented method cures any potential undue burden imposed on the DVA by the subpoena. Id. at 5. The forty facilities provided in the Narrowing Table were discovered by Burlodge from Standex pursuant to discovery in the underlying case. Reply Memorandum in Support of Burlodge Limited's Motion to Compel [#8] ("Reply") at 3; see Exhibit 13 to Reply.

B.      DVA

The DVA takes the position that the *Touhy* regulations should provide the appropriate standard to determine whether it has to comply with the subpoena. In denying compliance with Burlodge's original subpoena, the DVA General Counsel found that several factors in the DVA's *Touhy* regulations militated against complying with Burlodge's request for discovery, and accordingly denied the request. Opposition to Burlodge Limited's Motion to Compel [#5] ("Opp.") at 3. Alternatively, the DVA claims that if the government has directly infringed upon

4

Burlodge's patent, the plaintiff's sole remedy is a suit against the Federal government in the

Court of Federal Claims.  <u>See</u> 28 U.S.C. § 1498(a).

Second, according to the DVA, Burlodge's only basis for suspecting that the DVA is

engaging in direct infringement is that the Atlanta VA bought retherm carts from Standex.  <u>Id.</u> at

5-6.  It argues that suspicion is an insufficient basis upon which to obtain discovery and that

Burlodge is attempting to "use discovery against the government to show that it had a legitimate

claim . . . against Standex alleging infringement."  <u>Id.</u> at 8.  The DVA further states that if the

government had used the patented method, Burlodge's sole remedy would be against the

government alone in the Court of Federal Claims and is irrelevant to the underlying suit.  <u>Id.</u>  The

DVA contends that Burlodge's motion is irrelevant to the underlying case and is a "fishing

expedition" to confirm Burlodge's suspicion that the government is infringing its patent.  <u>Id.</u> at 1.

Third, the DVA contends that the information requested is overbroad because the request

is not limited to the methods the DVA uses with respect to its retherm carts.  <u>Id.</u> at 10.  Burlodge

has asked instead for all information related to the purchase of the retherm equipment, including

proposal information related to such purchases by the DVA (not solely those from Standex), as

well as information on cost and profit margins made in providing meals to DVA consumers.  <u>Id.</u>

The Narrowing Table does not cure the defect of overbreadth, according to the DVA, because it

is a tool that will be used to seek further discovery.  <u>Id.</u> at 11.

Finally, the DVA argues that the subpoena imposes an undue burden because it requires

the DVA to disrupt the daily work of its employees and seek information from 40 independently-

operated facilities in a number of different states.  <u>Id.</u> at 11-12.  The DVA asks the Court to take

into consideration that it is a non-party to the suit and that it is a government agency with a

unique interest in conserving scarce public resources.  Id. at 12.

## ANALYSIS

A.    Legal Standards

      1.    Controlling Standard for Whether the Government Must Comply With a
           Subpoena

      The *Touhy* regulations were enacted by various government agencies under the authority

of the so-called "Federal Housekeeping Statute."  5 U.S.C. § 301.  This statute allowed

government agencies to create procedures for responding to subpoenas and requests for

testimony.  See, e.g., Comm. for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d 788, 793

(D.C. Cir. 1971).  They do not, however, confer a separate privilege upon the government, nor

create a legal basis to withhold information pursuant to a federal subpoena.  See Houston Bus.

Journal v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996); see

also Watts v. SEC, 482 F.3d 501, 508-09 (D.C. Cir. 2007) ("[T]he legal basis for any opposition

to a subpoena must derive from an independent source of law such as government privilege or

the rules of evidence or procedure." (citing James WM. Moore et. al., MOORE'S FEDERAL

PRACTICE § 45.05(1)(b) (3d ed. 2006)).  In the instant case, where a valid subpoena has been

served upon a government agency, the controlling legal standard by which the court reviews

whether the agency must comply is based on the Federal Rules of Civil Procedure.  See Linder v.

Calero-Portocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001); see also Watts, 482 F.2d at 508 ("Rule

45's privilege and undue burden standard thus applies to both document and testimonial

subpoenas.").

2.    Whether this Court has Jurisdiction Over this Motion

This suit has been brought pursuant to section 35 of the United States Code, which provides recovery for inducement to infringe and contributory infringement. 35 U.S.C. §§ 271(b), (c), respectively. The DVA contends, however, that Burlodge's sole remedy for infringement of a patent by the government is in the Court of Federal Claims pursuant to 28 U.S.C. § 1498.[3] Opp. at 8. It therefore follows, according to DVA, that since Burlodge's sole remedy would be a suit against the government alone in the Court of Claims, the discovery Burlodge seeks is "irrelevant to a district court proceeding between two private parties involving the same infringement claim." Opposition to Burlodge's Limited Motion to Compel at 8.

First of all, the Federal Circuit has stated that § 1498 does not deprive district courts of jurisdiction to decide a patent infringement suit between private parties, but is rather best read as an affirmative defense going to the "merits of the case" that must be asserted by the alleged infringer to shift liability from itself to the United States. Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 554 (Fed. Cir. 1990) (citing Sperry Gyroscope Co. v. Arma Eng'g Co., 271 U.S. 232, 235-36 (1926)); see also Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1382 (Fed. Cir. 2002) ("1498(a) does not deprive a district court of jurisdiction.").

Although other courts have interpreted § 1498 to be a jurisdictional bar, see, e.g., Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell, 399 F.2d 913, 915 (5th Cir. 1968), cert. denied, 393

---

[3] The relevant portion states: "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims. . . ." 28 U.S.C. § 1498(a).

U.S. 1050 (1969), this Circuit has never directly addressed the question.[4]  The Federal Circuit's interpretation of § 1498 is highly persuasive, particularly because the Supreme Court precedent cited for its authority, <u>Sperry</u>, continues to be good law.  <u>See, e.g.</u>, Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 141 (1946) ("[W]e do not think that section 2 reflects a decision by Congress that all suits involving licenses under the Act and presenting questions of coverage or validity should be tried in the Court of Claims."); Crater Corp v. Lucent Tech., Inc., 255 F.3d 1361, 1369-70 (Fed. Cir. 2001), cert. denied, 535 U.S. 1073 (2002).  Cf. Identification Devices, Inc. v. United States, 121 F.2d 895, 896 (D.C. Cir. 1941) (bar of what is now § 1498 applies only to action in which the United States is itself sued for infringement; "[w]hether the statute exempts from liability a manufacturer who produces materials for the Government is, of course, an entirely different question from whether the Government itself has consented to be sued."), cert. denied, 314 U.S. 615 (1941).

Thus, § 1498 cannot be read to displace jurisdiction over a patent suit against a third party merely because that third party provides goods or services to the government and the plaintiff claims that the goods or services being used by the government infringe its patent.

Perhaps more importantly, DVA's position is *non sequitur*.  That the Court of Claims has jurisdiction over a particular lawsuit or type of lawsuit does not displace the jurisdiction this Court unquestionably has to resolve a motion to quash a subpoena directed against the government.

---

[4] Two D.C. Circuit cases have addressed this question tangentially without deciding whether § 1498 is a jurisdictional bar or affirmative defense:  Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 196 n.3 (D.C. Cir. 1992) (questioning a party's assertion that § 1498(b) is an affirmative defense, but declining to make a decision on the issue because he raised the argument for the first time in his reply brief on appeal); Auerbach v. Sverdrup Corp., 829 F.2d 175, 181 (D.C. Cir. 1987) (reversing the district court's dismissal for lack of jurisdiction based upon § 1498(b) because the defendant raising the jurisdictional bar failed to show that the government consented to or authorized any copyright infringement), <u>cert. denied</u>, 485 U.S. 905 (1988).

B.     The Subpoena Must Be Quashed

The DVA contends that Burlodge may not seek discovery based on mere suspicion that evidence exists to support the underlying contention.  Opp. at 7.  It relies on the Federal Circuit's decision in Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318 (Fed. Cir. 1990).  The Federal Circuit reversed a district court's refusal to quash a subpoena finding that the district court had ignored the crucial distinction between permitting a plaintiff to "flesh out a pattern of facts already known" and the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion that, for example, the third party had infringed the patent.  The Federal Circuit stated:

> There appears to be little case law on what is required to show that a particular inquiry is relevant to the subject matter of damages involved in the pending case. By analogy, however, were suit brought against K-Flow on a mere suspicion of infringement, discovery would not be allowed based on an allegation alone. "A bare allegation of wrongdoing . . . is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 363 (1978).  The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.  See, e.g., Netto v. AMTRAK, 863 F.2d 1210, 1216 (5th Cir. 1989); MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 52 (1st Cir. 1987); Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978); Hinton v. Entex, Inc., 93 F.R.D. 336, 337-38 (E.D. Tex. 1981); Isaac v. Shell Oil Co., 83 F.R.D. 428 (E.D. Mich. 1979).  That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request.

Id. at 1327.  DVA points out that the only evidence to which Burlodge points is a statement in a deposition of a man named Thomas Taylor [5] that a VA Hospital in Atlanta purchased a Unitron 7

---

[5] Mr. Taylor is not identified so I will assume he works for or has some affiliation with Standex.

system. Opp. (quoting Mot. to Compel, Exhibit 7 at 111, lines 7 to 12).

For its part, Burlodge explains that it alone has the right to grant its customers the right to use retherm carts to practice the patented method to use the cars in a certain way.  It therefore argues that it should be permitted to discover whether (1) Standex made statements that whatever system Standex used and sold "performs equivalent steps of Burlodge's patented methods" and (2) statements by Standex "concerning active inducement to infringe made by Standex to the DVA, or training the DVA on how to utilize the Standex equipment to perform the steps of Burlodge's patented methods."  <u>Reply Memorandum in Support of Burlodge Limited's Motion to Compel</u> at 4.

The narrow question first presented is whether Burlodge has made a sufficient showing that its demand is not based on what the Federal Circuit has described as an unfounded suspicion because Burlodge has a reasonable basis to believe, premised on the information already in its possession, that it has a viable claim that the DVA's use of the carts, as instructed in their use by Standex, violates Burlodge's patent.  <u>Micro Motion, Inc.</u>, 894 F.2d at 1327.

As the Federal Circuit pointed out in that case, Rule 26 (g)(1) of the Federal Rules of Civil Procedure deems any signed discovery request to be a certification by the attorney submitting it as not to be interposed for any improper purpose.

Building on that rule, I will deem as true Burlodge's representation, set out above, that the carts can be used in a manner that violates its patent to be true.  It would then follow that the DVA's use of the carts in that manner would violate the patent and that possibility permits me to conclude that there is a reasonable basis, independent of the discovery sought, for Burlodge to

assert a potential patent violation.  With that said, it hardly follows that the DVA's motion to compel must be granted.

 Rule 45(c)(1) requires that the party or attorney serving a subpoena "take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena."  Fed. R. Civ. P. 45(c)(1).  The court then has the obligation to quash or modify a subpoena when it "subjects a person to an undue burden."  Id.  Its obligation is particularly acute lest public resources be commandeered for private purposes.  See Watts, 483 F.3d at 508-09.

 Moreover, Watts also teaches that in assessing whether a burden is undue under Rule 45, the court should look to the standards articulated in Rule 26(b)(2) of the Federal Rules of Civil Procedure.  The court of appeals stated in Watts:

> One additional point warrants mention: The Rule 45 "undue burden" standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties. See, e.g., Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir.1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry); Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir.1999) (quoting id.); see also Fed. R. Civ. P. 45(c)(2)(B) (any court order to compel compliance with document subpoena "shall protect any person who is not a party or an officer of a party from significant expense" of compliance).  In addition, Federal Rule of Civil Procedure 26(b)(1)-(2) requires district courts in "[a]ll discovery" to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Id. at 509.  When Burlodge's demands are first judged by the more forgiving standard of relevance to its case against Standex, most of them fail.

The topics of the deposition of a DVA official demand information as to use (topic 1) but also demand information as to costs to prepare a meal.  Similarly, the requests for production, while seeking information about the purchase by the DVA of the Unitron 7 equipment, also seek information about costs and profits (Demands 6-8).  The amount of money saved by the DVA in preparation of meals does not relate to the issue of whether there has been direct infringement, and is equally irrelevant to the "central inquiry" of (1) whether the DVA purchased retherm carts from Standex and (2) whether Burlodge's patented method of dispensing food was used.  See Opp. at 2.  Further, the patent laws do not concern themselves with the infringer's profits from the infringement, but rather with the patent holder's damages, i.e., the amount it would have made if the infringement never occurred.  See Glenayre Elec., Inc. v. Jackson, 443 F.3d 851, 869 (Fed. Cir. 2006) (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508 (1964)), cert. denied, 549 U.S. 1030 (2006); Minn. Mining & Mfg. Co. v. Lake Country Mfg., Inc., 918 F. Supp. 1307, 1316-19 (D. Minn. 1996) (to recover for lost profits, patent holder must show (1) demand, (2) absence of acceptable non-infringing substitutes, (3) capability to exploit demand, and (4) amount of profit he would have made), dismissed without opinion upon agreement of the parties, 106 F.3d 426 (Fed. Cir. 1997).  The money that the DVA may have made because of the alleged infringement is irrelevant.

Clearly, the only proper topic of any discovery would be (1) the information as to how the system was to be used that Standex provided to the DVA when it sought to sell whatever system it sold to the DVA; and (2) instructional material, whether in writing or some other media, such

as video, provided by Standex as to the use of its system.  Additionally, Burlodge's demand to inspect the DVA premises is, in my view, premature and disruptive until that information has been provided.

Yet, even modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other sources.

First, there is no indication that Burlodge sought the information that the DVA had about its relationship with Standex by filing a demand under the Freedom of Information Act, and there is no showing whatsoever that there is any impediment to the use of that statute by Burlodge.

Second, the only statement about Burlodge's effort to secure the information it seeks from the DVA from Standex is the following:

> Burlodge knows, from a Rule 30(b)(6) deposition of Standex, that the DVA purchased those retherm carts from Standex for the use at a number of facilities.  (Exhibit 7)[6]  Unfortunately, Standex would not provide details as to how the DVA facilities use/used the Standex manufactured retherm carts.  Id.  This is what brought about the present non-party subpoena at issue.

Mot. to Compel at 2.  Surely, counsel for Burlodge knows of the resources and remedies available to Burlodge under the Federal Rules of Civil Procedure to compel Standex to produce relevant information in the discovery process.  Until Burlodge at least makes the effort and fails for some reason not attributable to its own fault, this Court cannot possibly determine whether any subpoena to DVA, no matter how limited, is still unduly burdensome because the information sought "can be obtained from some other source that is more convenient, less

---

[6] This is a reference to the testimony of Thomas Taylor about there being one potentially infringing system in the DVA facility in Atlanta.

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(I).  Thus, I must conclude that the

subpoena constitutes an undue burden to the DVA and order it quashed.

### CONCLUSION

In accordance with the limitations set above, Burlodge's Motion will be denied.  An

Order accompanies this Memorandum Opinion.


Date: April 28, 2009                        _____/S/_____

                                            JOHN M. FACCIOLA
                                            U.S. MAGISTRATE JUDGE